# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES *ex rel.* | ) | |
| LISA WHEELER, | ) | |
| | ) | |
|     Plaintiff-Relator, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. 1:21-CV-241-MR-WCM |
| | ) | |
| ACADIA HEALTHCARE | ) | |
| COMPANY, INC. *et al.* | ) | |
| | ) | |
|     Defendants. | ) | |


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT

# TABLE OF CONTENTS

Introduction ....................................................................................................................1

Background ....................................................................................................................2

   I.     Acadia Healthcare and Ms. Wheeler ............................................................2

   II.    Medication-Assisted Treatment for Opioid Addiction................................2

   III.   Defendants' CIA ............................................................................................4

   IV.   This Lawsuit ..................................................................................................4

Pleading Standard ..........................................................................................................4

Argument........................................................................................................................6

   I.     Relator's allegations regarding group billing and the CIA are not plausible on their face. ..............................................................................6

   II.    The Amended Complaint fails to allege fraud with particularity.................9

        A.   The Amended Complaint fails to allege any false claim with particularity. ...................................................................................10

        B.   The Amended Complaint fails to show that false claims were necessarily submitted. ...............................................................12

   III.   The Amended Complaint fails to show that the alleged false representations were material to the government's decision to pay any claim. ........................................................................................................21

Conclusion ...................................................................................................................25

i

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 5, 9

*Chatterbuck v. City of Charlottesville*,
708 F.3d 549 (4th Cir. 2013) ........................................................................ 5

*Haw. ex rel. Torricer v. Liberty Dialysis-Hawaii, LLC*,
512 F. Supp. 3d 1096 (D. Haw. 2021) ........................................................... 6

*Sturgeon v. Pharmerica Corp.*,
438 F. Supp. 3d 246 (E.D. Pa. 2020) ........................................................... 18

*U.S. ex rel. Badr v. Triple Canopy, Inc.*,
950 F. Supp. 2d 888 (E.D. Va. 2013) ...................................................... 18-19

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
809 F.3d 365 (7th Cir. 2016) ...................................................................... 20

*U.S. ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*,
2018 WL 1309734 (W.D. Va. Mar. 13, 2018) .............................................. 24

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002) .................................................................. 20

*U.S. ex rel. Grant v. United Air. Inc.*,
912 F.3d 190 .......................................................................................... 10, 13

*U.S. ex rel. Gugenheim v. Meridian Senior Living, LLC*,
36 F.4th 173 (4th Cir. 2022) ........................................................................ 1

*U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
2015 WL 12991207 (S.D. Ohio Sept. 14, 2015) .......................................... 16

*U.S. ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*,
285 F. Supp. 3d 44 (D.D.C. 2017) .............................................................. 18

*U.S. ex rel. McClain v. Nutritional Support Servs., L.P.*,
2020 WL 2464655 (D.S.C. Mar. 16, 2020) ................................................. 13-14

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
707 F.3d 451 (4th Cir. 2013) ................................................................*passim*

*U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*,
2020 WL 1245374 (M.D.N.C. Mar. 16, 2020) ................................................. 10

*U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*,
42 F.4th 185 (4th Cir. 2022) ................................................... 5, 10, 11

*U.S. ex rel. Petratos v. Genentech Inc.*,
855 F.3d 481 (3d Cir. 2017) ..................................................... 24

*U.S. ex rel. Taylor v. Boyko*,
39 F.4th 177 (4th Cir. 2022) ................................................... 5, 22, 24

*U.S. ex. rel. Ribik v. HCR ManorCare, Inc.*,
2017 WL 3471426 (E.D. Va. Aug. 10, 2017) ................................................. 19

*U.S. v. Kernan Hosp.*,
880 F. Supp. 2d 676 (D. Md. 2012) ............................................. 6, 15

*U.S. v. Triple Canopy, Inc.*,
775 F.3rd 628 (4th Cir. 2015) ................................................... 12

*U.S. v. Triple Canopy, Inc.*
857 F.3d 174 (4th Cir. 2017)..................................................... 12, 24

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
579 U.S. 176 (2016) ................................................................. 21

*Vitol, S.A. v. Primerose Shipping Co.*,
708 F.3d 527 (4th Cir. 2013) ......................................................... 5

*Walters v. McMahen*,
684 F.3d 435 (4th Cir. 2012) ................................................... 4-5

Rules

Rule 8 ................................................................................... 4, 21-22, 25

Rule 9 ................................................................................... *passim*

Rule 12 ................................................................................ 4, 25


Statutes

31 U.S.C. § 3729 ................................................................... *passim*

42 C.F.R. § 410.67 ................................................................ *passim*

Case 1:21-cv-00241-MR-WCM     Document 43-1     Filed 09/16/22     Page 5 of 31

# INTRODUCTION

This is a *qui tam* action under the False Claims Act.[1] Defendants operate hundreds of behavioral healthcare facilities in more than thirty states. Relator Lisa Wheeler once worked for one defendant, in one state, at one clinic—in a role that had nothing to do with billing or with the services this lawsuit is about. From that vantage point, and largely on information and belief, she claims to have identified 810 paragraphs' worth of fraudulent billing practices involving Medication-Assisted Treatment ("MAT"). But the purported fraud—billing for group therapy without providing it as part of MAT—fails at every turn:

- The theory is fundamentally implausible. Medicare uses "bundled code" billing for MAT. Falsely claiming to provide group therapy would not let Defendants bill even a cent they could not otherwise claim.

- Relator fails to identify any false claim that was "actually presented to the government for payment" or to show that one must "necessarily" have been submitted. *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-57 (4th Cir. 2013).

- Because Defendants are entitled to bill the same amounts regardless of whether they provide group therapy, the alleged fraud is not just implausible, but immaterial to the Government's decision to pay.

Relator's Amended Complaint must be dismissed.

---

[1] Relator is suing under the federal and NC False Claims Acts (collectively, the "False Claims Act" or the "FCA"). The analysis under each statute is the same, and each of Relator's claims fails for the same reasons. *See U.S. ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 179 n.2 (4th Cir. 2022).

1

## BACKGROUND

The gist of Relator's Amended Complaint is that Defendants submitted false claims to the Government by failing to provide group therapy and failing to notify the Department of Health and Human Services Office of Inspector General ("HHS-OIG") of a "reportable event" under Defendants' Corporate Integrity Agreement ("CIA") or to provide required compliance training under their CIA. After investigating Relator's allegations, the Government declined to intervene.

## I.     Acadia Healthcare and Ms. Wheeler

Acadia provides behavioral health services in more than 230 facilities across 39 states, serving approximately 70,000 patients per day. (Am. Compl., ¶¶ 86-87). In North Carolina, Acadia provides MAT for opioid addiction at several clinics, including Asheville CTC where Relator previously worked. (*Id.*, ¶¶ 77-78). Her job largely consisted of physical assessments of patients and prescribing medication. (*Id.*, ¶ 464). She never provided group therapy, managed the provision of therapy, or was involved in billing at any of Defendants' facilities. (*Id.*, ¶¶ 465, 531, 535).

## II.     Medication-Assisted Treatment for Opioid Addiction

MAT is a critical tool in combatting the opioid epidemic, and is covered by government healthcare programs. Medicare began covering MAT services on January 1, 2020. (*Id.*, ¶ 249). MAT services are billed using a bundled code encompassing all treatment services, including medication dispensing and

2

administration, counseling, therapy, and drug testing. (*Id.*, ¶ 258). Initially, CMS proposed a rule that would have required providers to render at least 51% of the services in a patient's treatment plan, each week, in order to bill. (*Id.*, ¶¶ 240-41). Ultimately, CMS discarded that rule, instead "adopt[ing] a rule that only required *one* Opioid Use Disorder treatment service be provided during a weekly episode of care in order to bill Medicare for the entire weekly bundle of services." (*Id.*, ¶ 244; 42 C.F.R. § 410.67(d)). Pricing for the bundled codes are "heavily based on the drug component of the treatment provided," and reimbursement does not differ based on how many ancillary services—such as group therapy—are provided. (Am. Compl., ¶¶ 253, 255, 258).

North Carolina Medicaid also covers MAT services, including group therapy. (*Id.*, ¶¶ 279, 285-86). CMS specifically notes that "states have flexibility to specify which counseling services and behavioral therapy they will include in the new mandatory benefit." (*Id.*, ¶ 280). As DHHS laid out in its Substance Use Disorder Implementation Plan Protocol, "individual, group, and family therapies" are included in the covered services, and are paid as a "[f]ee-for-service." (*Id.*, ¶ 287 n.27). But, North Carolina Medicaid regulations do not require every Medicaid patient to receive every MAT service. (*See id.*, ¶ 468 ("Patients' treatment plans indicate the *frequency* and *type* of counseling services that must be provided.")

3

(emphasis added)). Providers must *offer* group therapy to Medicaid patients, but are not required to *provide* or *bill* group therapy for every patient.

III.    Defendants' CIA

In addition to her group therapy allegations, Relator alleges FCA violations based on reports she believes Defendants were required to make under their CIA. In 2019, Defendants Acadia and CRC entered into a CIA with HHS-OIG resulting from an FCA investigation in West Virginia. (*Id.*, ¶ 408). A copy of the CIA is publicly available. (*Id.*, ¶ 408 n.44). The annual submissions and reports required under the CIA are not publicly available. Relator alleges no facts suggesting she was involved in any submission to HHS-OIG under the CIA, nor that she has any knowledge of what may or may not have been stated in any reports submitted to HHS-OIG.

IV.    This Lawsuit

Relator filed her original Complaint under seal on September 10, 2021. [Dkt. 2]. After reviewing Relator's allegations and investigating for nine months, the Government declined to intervene. [Dkt. 17]. Relator elected to proceed with the declined case, and served Defendants on July 27, 2022. [Dkt. 23-25]. On August 1, 2022, Relator filed her Amended Complaint. [Dkt. 26].

**PLEADING STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439

4

(4th Cir. 2012). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.; see also Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013); *Chatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013).

Relator asserts substantive FCA claims under 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), (a)(1)(D), and (a)(1)(G). To state a claim under the FCA, a relator must allege facts supporting four elements: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." *U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 188 (4th Cir. 2022). Failure to sufficiently allege facts supporting any element "dooms a claim." *Id.*

Because FCA claims sound in fraud, relators must also satisfy Rule 9(b)'s requirement to plead fraud with particularity—they must allege facts showing "the fraud's 'who, what, when, where, and how.'" *Nathan*, 707 F.3d at 455; *U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022).

I.     Relator's allegations regarding group billing and the CIA are not plausible on their face.

Relator's allegations regarding group therapy fail to state a plausible claim for relief because neither Medicare nor Medicaid requires group therapy, and Medicare's bundled payment system does not make it possible to bill for group therapy. Where Medicare's payment system does not even allow for separate billing and reimbursement as described in an FCA complaint, "then the [c]omplaint utterly fails to explain under what circumstances [the alleged scheme] *does* result in a false claim being submitted to the government." *U.S. v. Kernan Hosp.*, 880 F. Supp. 2d 676, 688 (D. Md. 2012). In a similar case, the court granted a motion to dismiss an FCA complaint, noting that Medicare had switched its reimbursement to a bundled code for end-stage renal disease treatment. *Haw. ex rel. Torricer v. Liberty Dialysis-Hawaii, LLC*, 512 F. Supp. 3d 1096, 1103 (D. Haw. 2021). And because the services were bundled into a single code, and because the services at the heart of the relator's FCA allegations were not separately billed, deficiencies in those services could not result in a false claim. *Id.* at 1123. Based on that reasoning, if a bundled code includes several optional services, not all of which are required, then failure to provide one service does not cause a false claim to be submitted.

The *sine qua non* of any FCA violation is a false claim. *See Nathan*, 707 F.3d at 456-57. If a relator fails to plead facts to establish the most fundamental element

of falsity, the complaint fails. *Id*. Relator's claims based on § 3729(a)(1)(A) assert that Defendants failed to provide required group therapy treatment and thereby knowingly "caused to be presented false claims for payment or approval." (Am. Compl., ¶ 747). Relator's § 3729(a)(1)(B) claims similarly recite that Defendants knowingly made material false records and statements to get claims paid. (*Id.*, ¶¶ 755-57, 775-76). In support of these summary statements, Relator makes further sweeping and conclusory allegations of Defendants' supposed scheme to defraud the Government. (*See, e.g.*, *id.*, ¶¶ 648-55). Yet, Relator does not assert—nor can she—that this alleged failure to provide group therapy, even if it occurred, made any claims "false or fraudulent."

As Relator acknowledges, MAT is billed to Medicare using a bundled code that is tied to the underlying medication that is administered. (*Id.*, ¶¶ 248-55).[2] These are all bundled codes that encompass both the underlying medication as well as other ancillary services that are part of the patients' treatment. (*Id.*, ¶ 250). Those ancillary services include substance use counseling, individual and group therapy, and toxicology testing, *if performed*. 42 C.F.R. § 410.67(b). Because these are weekly bundled codes, the bundled code can be billed any week in which a patient is

---

[2] For instance, if Defendants dispense or administer Methadone, they bill Medicare using HCPCS Code G2067. (*Id.*, ¶ 258(a)). If Defendants dispense or administer Buprenorphine, they bill Medicare using HCPCS Codes G2068-G2072. (*Id.*, ¶ 258(b)-(f)).

7

provided medication, regardless of whether he or she received any of the other services. 42 C.F.R. § 410.67(d)(3). Failure to provide group therapy does not render that week's claim false, because Medicare does not require group therapy.

As explained in greater detail in Part II below, Relator also fails to plausibly state a claim with regard to Medicaid billing. She notes that Medicaid programs are required to *cover* MAT, "including medication, counseling services, and behavioral therapy." (Am. Compl., ¶ 279). North Carolina Medicaid "provides *coverage* for individual and group therapy," but, again, that does not mean that a provider is required to *bill* for this covered service. (*Id.*, ¶ 286). Further, North Carolina Medicaid requires at least monthly individual *or* group therapy during the early phase of a Medicaid patient's treatment. (*Id.*, ¶ 297). But Medicaid patients are not required to receive weekly or even monthly group therapy—or any group therapy at all. Therefore, the fact that group therapy was not provided to a given Medicaid patient on any particular date does not state a plausible claim under the FCA because it does not show—or even suggest—that a false claim was ever submitted.[3]

---

[3] The Amended Complaint similarly walks through coverage for MAT and group therapy for other government healthcare programs, including TRICARE (*Id.* ¶¶ 306-20), Department of Veterans Affairs (the "VA") (*Id.* ¶¶ 321-30), and Cures Act grants (*Id.* ¶¶ 331-46). But, because Relator fails to allege any claims actually submitted to these payors, the Amended Complaint necessarily fails to state a claim for relief under the FCA as it relates to TRICARE, VA, and Cures Act grants.

Relator's CIA-related claims also fail to state a plausible claim for relief. Under Defendants' CIA, an independent review organization annually audits Defendant CRC's corporate-wide practices, including its billing and coding. (Def's CIA, § III.D, App'x A & B). From the mere fact that Relator *believes* that group therapy was not provided—even though it was not required—Relator asks this Court to infer that Defendants repeatedly violated the FCA and their CIA, all while avoiding detection by HHS-OIG and the independent monitor, while simultaneously submitting thousands of claims to government healthcare programs for services that Relator alleges were not actually provided. The Supreme Court has explained that a court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When viewed in the context of the highly regulated healthcare environment in which Defendants operate, Relator's allegations defy common sense and do not state a plausible claim for relief under the FCA. *Id.* (noting that allegations leading to a "mere possibility of misconduct" must be dismissed).

II.    The Amended Complaint fails to allege fraud with particularity.

The linchpin of any FCA case "is whether the defendant caused a false claim to be presented to the government[.]" *Nathan*, 707 F.3d at 456. Rule 9(b) allows a relator to establish that element by either: (a) alleging "with particularity that *specific false claims actually were presented* for payment," or (b) alleging "a pattern of

9

conduct that would *necessarily* have led to the submission of false claims to the government for payment." *U.S. ex rel. Grant v. United Air., Inc.*, 912 F.3d 190, 197 (4th Cir. 2018) (emphasis added). The Amended Complaint does neither.

    *A.    The Amended Complaint fails to allege any false claim with particularity.*

To "allege with particularity that *specific* false claims *actually were presented* for payment," the relator must, "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Nathan*, 707 F.3d at 455-57 (emphasis added).

A recent Fourth Circuit FCA case highlights what the Amended Complaint lacks. *See Nicholson*, 42 F.4th at 195. There, the district court dismissed the relator's FCA complaint for failure to sufficiently plead fraud under Rule 9(b). A relator must describe the "who, what, when, where, and how" of the alleged false claim. *Id*. The *Nicholson* relator failed on each count. The court found that the relator alleged no facts about actual submitted claims, but rather only provided the month and year, "not a precise day." *U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*, 2020 WL 1245374, at *8 (M.D.N.C. Mar. 16, 2020). The relator also failed to provide a "precise amount" of payment received by the defendants. *Id*. The relator's complaint failed to "answer who submitted a claim, when the claim was submitted, where it was submitted, or what the contents of the claim were." *Id*. As the Fourth Circuit

10

noted in affirming the dismissal, "[s]o much detail is missing from [relator's] allegation that it sounds like a neighbor's conversation only half overheard through the walls." *Nicholson*, 42 F.4th at 196.

Relator's claims are similarly deficient. Relator does not allege a single actual false claim submitted to the Government, not by a precise date or precise amount, where it went, or who submitted it. The closest Relator gets to alleging actual claims is the allegation that "*[u]pon information and belief*, Defendants submitted bills to Medicare" and Medicaid for "OTP services—including group therapy—during every week in April 2021 and during the week of Patient 6's May 19, 2021 visit with Relator." (Am. Compl., ¶¶ 630-31) (emphasis added). Other than that single unnamed patient, Relator identifies no other patients for whom Defendants submitted claims.[4]

Relator's allegations with respect to that sole patient fall woefully short of Rule 9(b)'s requirements. The entirety of her allegations are that this patient's records contained "duplicate falsified group therapy notes," that this patient "did not participate in any of these group therapy sessions," that this patient "expressed interest in group therapy" but this patient's "treatment plan did not state the

---

[4] Relator refers to *twelve* other patients in the Amended Complaint. (Am. Compl., ¶¶ 496, 501, 504-05, 529, 540, 591, 601-05, 608). However, none of these patients are alleged to be enrolled in government healthcare programs. As such, any claims submitted for these patients are entirely irrelevant to the FCA.

11

frequency with which he should receive group therapy," and yet, "*upon information and belief*, Defendants submitted bills" to Medicare and Medicaid. (*Id.*, ¶¶ 618-19, 625, 628, 630-31) (emphasis added).

Just as in *Nicholson*, Relator provides only the month and year, and not the "precise day," of the alleged claims. In fact, Relator does not identify any date on which claims were *submitted*, only the weeks in which she claims group therapy was not provided. As in *Nicholson*, Relator also fails to allege the "precise amount" of any payments received by Defendants as a result of any allegedly false claims. In fact, Relator fails to allege that Defendants were paid at all for claims submitted for this patient. Relator's failure to identify actual false claims submitted to the Government is unsurprising given that nowhere does Relator allege that she had any involvement in billing. A relator "cannot state a claim by doing nothing more than presuming that [defendants] submitted false claims." *U.S. v. Triple Canopy, Inc.*, 775 F.3rd 628, 640 (4th Cir. 2015), *vacated and reinstated in part*, 857 F.3d 174.

> ### B. The Amended Complaint fails to show that false claims were necessarily submitted.

Unable to allege any specific false claim, Relator also fails to meet the alternative test of alleging facts showing that "presentment of a claim for payment was a necessary result" of Defendants' conduct. *Nathan*, 707 F.3d at 461. This is a demanding standard, and Relator's allegations do not come close.

Because "liability under the [FCA] attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme," describing a fraudulent scheme is not enough to state an FCA claim. *Nathan*, 707 F.3d at 456. The relator must show that this scheme must "*necessarily* have led to the submission of false claims to the government for payment." *Id.* at 456-57 (emphasis added). Showing that defendants' actions "could have led" to submission of a false claim is not enough, because such a showing "leaves open the possibility" that false claims were not submitted. *Grant*, 912 F.3d at 198. Nor may a relator simply conclude, on information and belief, that the scheme must have resulted in a false claim—a relator may not avoid Rule 9(b)'s particularity requirement by "alleg[ing] simply and without a stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Nathan*, 707 F.3d at 456-57.

Showing that false claims were the "necessary result" of Defendant's conduct is a demanding test. Several courts have held, on stronger allegations than Relator's, that this test was not met. In one recent case, the "closest the [relator] c[ame] to discussing the mechanics of submitting supposedly fraudulent claims" was when it stated that the defendant "generated requests for payment on CMS 1500 forms . . . which allegedly displayed [a false medication name]." *U.S. ex rel. McClain v. Nutritional Support Servs., L.P.*, 2020 WL 2464655, at *4, 5 (D.S.C. Mar. 16, 2020).

Even though the *McClain* relator described how false claims were prepared—and even though he alleged generally that the defendant "directly submitted false claims for reimbursement"—this failed to state a claim because it did "not describe the process of claim submission," "leav[ing] open the possibility" that the allegedly false claims were never submitted or were never paid. *Id*.

Here, Relator does not even describe the "mechanics" of claim *generation*, let alone describe any practice that would "necessarily" result in claims being submitted. She contends that the alleged "practice of falsifying group therapy records . . . necessarily led to the submission of false . . . claims for group therapy." (Am. Compl. ¶¶ 647-48). But she does not explain the "mechanics" of generating or submitting those claims, "leav[ing] open the possibility" that they were never created or were never submitted. *McClain*, 2020 WL 2464655, at *4-5.

In fact, the Amended Complaint "leaves open" a wide range of possibilities that no false claims were submitted. Relator cites precisely one patient who was enrolled in any government healthcare program. Even assuming, as Relator contends, that a claim "for group therapy" for that patient would be a false claim, the Amended Complaint "leaves open the possibility"—indeed, the near certainty[5]—that no false claim was ever submitted.

---

[5] The only government enrollee Relator cites is a dual Medicare-Medicaid enrollee. (Am. Compl., ¶ 584). Medicare pays for MAT services by a weekly bundled rate and provides no mechanism to separately bill group therapy. Providers bill

The Amended Complaint simply fails to account for the fact that Defendants may not have ever billed group therapy to Medicare (because doing so is not possible) or Medicaid (because it is simply one of many covered MAT services offered but not required). This missing connection is fatal to Relator's claims relating to group therapy.[6] And Relator's allegation that Defendants' "pattern and practice necessarily led to the submission of false and fraudulent claims for group therapy to Government Healthcare Programs" is precisely the type of summarily plead allegation that the court in *Kernan Hospital* warned against. (*See* Am. Compl., ¶¶ 648, 653; *Kernan Hosp.*, 880 F. Supp. 2d at 687). Such summary statements fall well short of Rule 9(b)'s requirements.

As for the CIA allegations, it is unclear whether Relator is attempting to assert claims under §3729(a)(1)(A) (presentment of a false claim) or §3729(a)(1)(B) (use of false record to get a false claim paid). Either way, the Amended Complaint still

---

Medicare, not Medicaid, for dual-eligible patients and therefore it is likely that no bill was ever submitted to Medicaid for this single patient. *See* https://www.medicaid.gov/medicaid/data-and-systems/macbis/tmsis/tmsis-blog/entry/51064#:~:text=Background%20Discussion,are%20also%20covered%20by%20Medicaid ("Medicare pays first for the Medicare-covered services that are also covered by Medicaid.").

[6] Relator's allegations relating to claims purportedly submitted to TRICARE, VA, and Cures Act grants, are even more deficient. Relator fails to allege *any* detail about *any* patient whose claims were paid by these government healthcare programs. Merely looping these programs into her allegations related to Medicare and Medicaid does not mean that claims were *necessarily* submitted to any of these programs, and they therefore fall miserably short of Rule 9(b)'s standard.

15

fails to plead any facts of an actual false claim or false statement that was ever submitted to the Government in connection with the CIA. There are no facts showing that Relator has any knowledge of what was submitted to the Government in connection with the CIA. There are no facts describing the content of any specific false claim or false statement related to the CIA, who made such a claim or statement, or the precise date any such claim or statement was submitted. Relator appears to have just reviewed the publicly-available CIA, quoted its provisions, and then baldly asserted that Defendants failed to comply. This cannot meet Rule 9(b)'s particularity requirements for FCA claims.

Relator also fails to plead a reverse false claim under § 3729(a)(1)(G) in connection with the CIA. To plead a reverse false claim, a relator must plead with the requisite particularity a false statement or false record that was used to avoid an obligation to the Government, or knowingly concealing or avoiding that obligation. 31 U.S.C. § 3729(a)(1)(G); *see also*, *U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 2015 WL 12991207, at *5 (S.D. Ohio Sept. 14, 2015) (dismissing claim under § 3729(a)(1)(G) because relators "have not pled their reverse false claims with the particularity required by Rule 9(b)"). Again, the Amended Complaint contains no facts describing any specific false statement or false record submitted to the Government in connection with the CIA. And there are no facts alleged that Defendants owed any obligation to the Government under the CIA. The closest

16

Relator comes to describing an "obligation" is in reciting the CIA's stipulated penalty provisions: "The CIA also provides for contractual remedies—including a range of stipulated monetary penalties—if Defendant Acadia and/or Defendant CRC breaches the terms of the CIA." (Am. Compl., ¶ 441). This untethered assertion cannot state a plausible claim for relief because Relator does not identify any plausible breach of Defendants' CIA.

First, Relator's allegations about Defendants' purported failure to implement or enforce compliance, training, and disclosure requirements, lack sufficient particularity under Rule 9(b). Other than stating that she did not receive "any annual training related to [Defendants'] obligations under the CIA until 2021," Relator's allegations as to this lack of compliance training falls drastically short of Rule 9(b)'s high bar. Furthermore, the stipulated penalties provision states that such penalties are available in cases of *material* breach of the CIA. (*Id.*, ¶¶ 441-44). Relator fails to allege—and could not allege with any reasonable basis—why her failure to obtain compliance training constituted a material breach of the CIA. Defendants employ tens of thousands of employees, and the fact that a single independent contractor failed to complete her compliance training one year does not constitute a breach. To the extent Relator alleges Defendants breached the CIA by failing to make a report to HHS-OIG, Relator alleges no specific facts showing she has any knowledge of the contents of any of Defendants' reports under the CIA.

17

Relator also fails to plead a cognizable "obligation to pay money to the government" to support reverse false claims liability. *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 277-79 (E.D. Pa. 2020). As the *Sturgeon* court explained, CIA stipulated penalties are "future duties to pay that are too speculative [to] be a valid basis for claims under § 3729(a)(1)(G)." *Id.* at 278. Where stipulated penalties are contingent on HHS-OIG's exercise of discretion, "they are not 'obligations.'" *Id.* at 278-79 (noting that defendant's CIA "provides that failure to comply with the CIA '*may* lead to the imposition of . . . monetary penalties'"). Because HHS-OIG retained discretion to impose stipulated penalties, a breach did not give rise to "an established duty to pay money to the government—at the time of breach, the penalties are not yet due." *Id.* at 279. Defendants' CIA contains the same contingent obligation to pay stipulated penalties as that in *Sturgeon*. For this additional reason, Relator's reverse false claims act claim must be dismissed.[7]

Finally, to the extent Relator attempts to assert FCA claims with respect to any of Defendants' other facilities, she alleges no facts to support such claims. A relator cannot broadly allege a fraudulent scheme outside of the location for which he or she has personal knowledge. *See U.S. ex rel. Badr v. Triple Canopy, Inc.*, 950

---

[7] This failure to allege a non-contingent obligation also dooms Relator's § 3729(a)(1)(D) conversion claim. Unassessed penalties are contingent obligations that do not "belong to the Government" to support an FCA conversion claim. *U.S. ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 285 F. Supp. 3d 44, 55 (D.D.C. 2017).

F. Supp. 2d 888, 900 (E.D. Va. 2013), *rev'd in part on other grounds*. Citing *Nathan*, the court in *Triple Canopy* stated that a relator "cannot use his allegation of a fraudulent scheme at one location involving one contract to create an inference that the scheme must have resulted in the submission of false claims at other locations governed by other contracts of which he lacked personal knowledge." *Id.* Where the relator cannot allege "even a single specific act committed" at a location outside of those in which he or she personally observed, "yet . . . pleads upon information and belief that wrongful conduct occurred" at those other locations, the complaint necessarily falls short of the requirements of Rule 9(b). *See U.S. ex. rel. Ribik v. HCR ManorCare, Inc.*, 2017 WL 3471426, at \*3 (E.D. Va. Aug. 10, 2017) ("Except for a conclusory allegation that he has personal knowledge of the alleged false claims, [relator] does not allege any specific personal knowledge of alleged violations occurring in the sixteen states named in his Amended Complaint.").

Relator alleges throughout the Amended Complaint that the conduct underlying her complaint also occurred "at Defendants' facilities across the State of North Carolina and the United States." (Am. Compl. ¶¶ 43, 49). She, however, was only ever an independent contractor at Defendants' Asheville CTC facility. (*Id.* ¶¶ 76, 78). She never worked at the North Wilkesboro facility, nor at any of Defendants' other facilities. Although Relator alleges that Defendants' conduct is widespread at

19

facilities other than where she worked, she altogether fails to allege—let alone allege with the particularity required by Rule 9(b)—any facts indicating that this conduct occurred at any other facility. Relator lacks any factual allegations related to any other facilities, including the North Wilkesboro facility. Any causes of action relating to claims submitted from those facilities must be dismissed under Rule 9(b).

Rule 9(b) requires Relator to allege with particularity the persons, places, dates, times, amounts, and circumstances of the purported fraudulent scheme. Relator's Amended Complaint lacks these concrete facts, but instead fills its 118 pages with 172 assumptions based on "information and belief." Pleading facts— particularly material facts—upon information and belief is generally insufficient in FCA cases governed by Rule 9(b). *See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310-11 (11th Cir. 2002) (noting that where Rule 9(b) applies, pleadings cannot be based upon information and belief); *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) (noting that such pleading cannot support an allegation under the FCA where it "can mean as little as 'rumor has it that.'"). Rumors form the bedrock of Relator's sprawling Amended Complaint. Her failure to allege any actual false claims billed to the Government, her failure to allege a scheme that *necessarily* would cause the submission of false claims, and her overarching lack of specificity as it relates to alleged violations of the CIA, are all fatal flaws that require dismissal under Rule 9(b).

III.  <u>The Amended Complaint fails to show that the alleged false representations were material to the Government's decision to pay any claim.</u>

Relator's Amended Complaint suffers from another fatal defect—it fails to sufficiently allege materiality. To state an FCA claim, a relator must show that the defendant's alleged conduct was "material" to the Government's decision to pay the claims—in other words, that it had "a natural tendency to influence, or be capable of influencing," the decision to pay. 31 U.S.C. § 3729(b)(4); *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 181 (2016).

The materiality standard serves an important role because the FCA "is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 579 U.S. at 194. As the Supreme Court explained, the materiality standard is "rigorous" and "demanding." *Id.* at 192, 194. In order to satisfy this demanding standard, a relator must plead specific facts that establish materiality with both plausibility (under Rule 8(a)) and particularity (under Rule 9(b)). *Id.* at 195 n.6. Materiality is not "too fact intensive for courts to dismiss [FCA] cases on a motion to dismiss." *Id.*

In *Escobar*, the Supreme Court instructed courts to consider the "likely or actual" effect that knowledge of the defendant's misrepresentation would have on the Government's decision to pay the claims. *Id.* at 193. It identified several factors in making this materiality assessment: (1) whether the violation was significant, as opposed to "minor or insubstantial"; (2) whether "the defendant knows that the

21

Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement"; or (3) whether "the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated." *Id.* at 194-95. Using this test, the Supreme Court sought to prevent the Government from requiring all contractors "to aver their compliance with the entire U.S. Code and Code of Federal Regulations." *Id.* at 196.

"'[N]aked[ly] assert[ing]' that a requirement is 'material,' without 'further factual enhancement,' is simply 'a formulaic recitation of the elements of a cause of action.'" *Boyko*, 39 F.4th at 193 (quoting *Iqbal*, 550 U.S. at 557). "Such assertions do not permit us 'to infer more than the mere possibility of misconduct,' which necessarily 'stops short of the line' required by Rule 8(a), and thus far short of that required by Rule 9(b)." *Id.* (quoting *Iqbal*, 550 U.S. at 557).

The Amended Complaint fails to plead materiality under *Escobar* because it fails to show that: (1) failure to provide group therapy was material to the Government's decision to pay claims for MAT services, or (2) failure to provide Relator with her annual compliance training and other compliance-related obligations, or to report a reportable event, was material to the Government's

decision to pay claims for MAT services or HHS-OIG's decision whether to impose stipulated penalties. Instead she relies yet again on conclusory assertions.[8]

Relator's repeated assertion that Defendants' actions were material rings hollow, particularly because Defendants did not submit claims for group therapy. Again, Medicare claims are paid on a bundled basis that does not require group therapy to be provided. And Medicaid does not require group therapy either. Therefore, failure to provide group therapy cannot be material because it is not required as a condition for the Government to pay claims.

In fact, the history of the CMS regulation applicable to Medicare's coverage of MAT services, 42 C.F.R. § 410.67(d), further supports the contention that failure to provide group therapy is not material to Medicare's decision to pay these claims. (*See* Am. Compl., ¶¶ 240-41, 250). That regulation requires only *one* of the numerous services within the menu of services to be provided in order to bill the weekly bundled code. (*Id.*, ¶ 250; 42 C.F.R. § 410.67(d)(3)). In other words, so long as medication is dispensed to a patient during the week in question, the provision of group therapy is immaterial to Medicare's decision to pay that claim.

---

[8] *See, e.g.*, Am. Compl., ¶¶ 57 ("materially false statements, certifications, and claims"), 634 ("certifications were material to the . . . payment decision"), 650 ("material to the Government Healthcare Programs' decisions to pay claims for group therapy"), 660 ("express and/or implied false certifications were material to Government Healthcare Programs' payment decisions").

The Amended Complaint pleads no facts as to how or why the Government would deny payment of a claim for MAT if it knew that Defendants failed to provide group therapy. *See U.S. ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*, 2018 WL 1309734, at *4 (W.D. Va. Mar. 13, 2018) (dismissing complaint for failure to show that false statements about the time of home health visits were material to the Government's decision to pay the claims). Nor does it show that the Government would deny payment of any claim, or impose a stipulated penalty, if it knew of the alleged CIA violations (failure to provide compliance training to just one independent contractor for just one year, and failure to report just one possibly reportable event, across organizations employing tens of thousands). Relator's conclusory assertions cannot supply what her factual allegations lack.[9] *See Boyko*, 39 F.4th at 193.

In sum, the Amended Complaint fails to sufficiently plead materiality. It fails to allege facts showing that any alleged misrepresentation was material to any payment (or any decision not to impose a stipulated penalty). Insofar as the Amended

---

[9] The Government's election not to intervene in this action also weighs against a finding of materiality. *See Triple Canopy,* 857 F.3d at 179 (finding evidence of materiality where the Government learned of the alleged fraud, elected not to renew its contract with the defendant, "and immediately intervened in the [FCA] litigation"); *see also U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) (finding no materiality in part because the Government knew about defendant's actions for six years and "has taken no action against [the defendant] and declined to intervene in this suit").

Complaint touches on materiality, it shows that the alleged misrepresentations could not have been material. For these reasons, the Amended Complaint fails to provide specific facts as required by Rules 8(a) and 9(b) to satisfy the rigorous and demanding standard of pleading materiality set out in *Escobar*.

## CONCLUSION

For these reasons, Defendants ask that this Court dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6).


Respectfully submitted,


/s/ Jennifer L. Weaver

| | |
|---|---|
| Jennifer L. Weaver (*Pro Hac Vice*) | Phillip Jackson (NC No. 21134) |
| Andrew F. Solinger (*Pro Hac Vice*) | David Hawisher (NC No. 55502) |
| Anna G. Rasmussen (*Pro Hac Vice*) | ROBERTS & STEVENS, PA |
| WALLER LANSDEN DORTCH & DAVIS, LLP | PO Box 7647 |
| 511 Union Street, Suite 2700 | Asheville, NC 28802 |
| Nashville, TN 37219 | Telephone: (828) 252-6600 |
| Telephone: (615) 850-8116 | pjackson@roberts-stevens.com |
| Fax: (615) 244-6804 | dhawisher@roberts-stevens.com |
| Jennifer.Weaver@wallerlaw.com | |
| Andrew.Solinger@wallerlaw.com | |
| Anna.Rasmussen@wallerlaw.com | |
| *Attorneys for Defendants* | |

# CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, I filed this Defendants'

Memorandum of Law in Support of Their Motion to Dismiss Relator's Amended

Complaint using the Court's CM/ECF system, resulting in service on all counsel of

record in this matter.

/s/ Jennifer L. Weaver
Jennifer L. Weaver