UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> and <br><br> THE STATE OF NORTH CARO-LINA, <br><br> *ex rel.* LISA WHEELER <br><br> Plaintiffs, <br><br> vs. <br><br> ACADIA HEALTHCARE COM-PANY, INC., et al. <br><br> Defendants. | C/A No. 1:21-cv-00241-MR-WCM |

**OBJECTIONS TO MEMORANDUM AND RECOMMENDATION**
**(ECF No. 51)**

## I.  Background

This case arises under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the North Carolina False Claims Act, N.C. Gen. Stat. § 1-607 *et seq.* Plaintiff-Relator Lisa Wheeler alleges that the Defendants—opioid addiction treatment providers—engaged in a pattern and practice of falsifying group therapy records and failing to provide adequate individual therapy in both their Office Based Opioid Treatment ("OBOT") and Opioid Treatment Programs ("OTPs"). (*See* ECF No. 26 at ¶¶ 483–581).

1

On August 1, 2022, Plaintiff-Relator filed her Amended Complaint. (ECF No. 26). Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which was fully briefed by the parties. (ECF Nos. 43, 45, 47). On June 14, 2023, Magistrate Judge W. Carleton Metcalf held a hearing on the Motion. On July 27, 2023, the Magistrate Judge issued a Memorandum and Recommendation ("Report"), recommending that the Motion be granted.[1] (ECF No. 51). These Objections follow.[2]

## II.    Plaintiff-Relator's Allegations

Section II of the Report summarizes Plaintiff-Relator's allegations. (ECF No. 51 at 3–11). Generally, the Magistrate Judge's summary of Plaintiff-Relator's allegations is accurate. However, there are at five erroneous or incomplete statements to which Plaintiff-Relator objects.

**First**, the Report only discusses Plaintiff-Relator's allegations about Defendants' OTP billing. (*See* ECF No. 51 at 5–6). However, the Amended Complaint alleges that Defendants submitted false claims for both OTP *and* OBOT services. (*See, e.g.*, ECF No. 26 at ¶¶ 348–62 (Medicare), 363–72 (Medicaid), 373–79 (TRICARE), 380–386 (VA), 387–393 (Cures Act)).

---

[1] Plaintiff-Relator is contemporaneously filing a Motion to Amend and Correct Scrivener's Error in Amended Complaint, which seeks only to add a statutory citation that was inadvertently omitted from Count IV of the Amended Complaint.

[2] Plaintiff-Relator's Objections follow the structure and headings used in the Report.

**Second**, the Report states that the Amended Complaint alleges that Defendants "submit bills" to Medicare, Medicaid, TRICARE, Department of Veterans Affairs ("VA"), and for Cures Act grant funds (collectively, "Government Healthcare Programs"). (ECF No. 51 at 5–6). While that is true, the Report omits any reference to Plaintiff-Relator's allegations that these claims "have been—and continue to be—paid" by the Government Healthcare Programs. (*See, e.g.*, ECF No. 26 at ¶¶ 362, 367, 370, 372, 379, 386, 391). The Amended Complaint repeatedly alleges that the United States and the State of North Carolina paid these claims based on Defendants' materially false statements, records, and certifications. (*See, e.g.*, *id.* at ¶¶ 52–57, 199–346, 348–93, 460–637).

**Third**, the Report states that Plaintiff-Relator "generally outlin[ed]" Defendants' submission of claims to Government Healthcare Programs. (ECF No. 51 at 5–6). Plaintiff-Relator objects, as the Amended Complaint contains detailed allegations about Defendants' submission of, and payment for, false and fraudulent claims for OTP and OBOT services.[3] (*See* ECF No. 26 at ¶¶ 52–57, 199–346, 348–93, 460–637).

---

[3] Throughout the Report, the Magistrate Judge repeatedly uses the word "generally" or "general" in describing Plaintiff-Relator's allegations. (*See* ECF No. 51 at 5, 6, 13, 14, 17, 22, 26, 28). Plaintiff-Relator objects to each of these characterizations. The Amended Complaint contains plausible and particularized allegations about Defendants' fraud. (*See, e.g.*, ECF No. 26 at ¶¶ 199–346, 348–93, 460–637).

**Fourth**, in describing Plaintiff-Relator's allegations about Defendants' prior fraud, the Magistrate Judge states that "Relator has not provided additional information or documents regarding" a 2014 FCA settlement between the Department of Justice and Defendant CRC Health, LLC's predecessor, CRC Health Corp. (ECF No. 51 at 6 n.3). Plaintiff-Relator objects to the extent the Magistrate Judge weighed the veracity of this allegation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (holding that the Court must "assum[e] that all the allegations in the complaint are true").

**Fifth**, in discussing the Corporate Integrity Agreement ("CIA"), the Magistrate Judge erroneously stated that it only imposed requirements on Defendant CRC Health, LLC. (ECF No. 51 at 7). The CIA used the defined term "CRC" to refer to both Defendant Acadia Healthcare Co., Inc. and Defendant CRC Health, LLC. (*See* ECF No. 49 at 1 ("This CIA applies to CRC Health, LLC and to Acadia in its oversight, operation, and management of CRC Health, LLC.").

## III.  Legal Standards

### A.  Objections to Report & Recommendation

The Magistrate Judge makes only a recommendation to the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The recommendation has no presumptive weight, and "[t]he authority and the responsibility to make an informed, final determination . . . remains with" the Court. *Id.* at 271. The Court "shall make a de novo

4

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the Magistrate Judge. *Id.*

### B. Motion to Dismiss

"Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it 'state[s] a claim to relief that is plausible on its face,' meaning that it pleads sufficient facts to support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, fraud-based claims—including most claims arising under the FCA[4]—must satisfy Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

There are two ways a relator can satisfy Rule 9(b)'s particularity requirement. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 194 (4th

---

[4] FCA conversion claims are not subject to Rule 9(b)'s heightened pleading standard. *See United States ex rel. Harbit v. Consultants in Gastroenterology*, No. 3:19-cv-03403-JMC, 2021 WL 1197124, at *7 (D.S.C. March 30, 2021) (holding that Rule 8's pleading standard applies because "Defendants' knowledge is the determinative factor for a FCA conversion claim, and not any alleged fraud"). The Amended Complaint alleges FCA conversion in Count III. (ECF No. 26 at ¶¶ 763–70).

Cir. 2022). First, a relator can allege "a representative example describing the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby . . . ." *Id.* (quotation omitted). Alternatively, a relator "can allege a pattern of conduct that would '*necessarily* have led[] to submission of false claims' to the government for payment." *Grant*, 912 F.3d at 197 (quoting *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013)). Under either alternative, "'[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts.'" *Nicholson*, 42 F.4th at 195 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

## IV. Objections

### A. Relator's Claims

The Amended Complaint alleges the following FCA causes of action: **(1)** Presenting False Claims; **(2)** Using False Records or Statements Material to a False Claim; **(3)** FCA Conversion; **(4)** Express and Implied False Certifications;[5] **(5)**

---

[5] The Report states that Count IV—"Violations of the FCA: Submission of Express and Implied False Certifications"— is brought under 31 U.S.C. § 3729(a)(1)(B). (ECF No. 51 at 14–16). Due to a scrivener's error, Plaintiff-Relator inadvertently omitted a citation to 31 U.S.C. § 3729(a)(1)(A) in Count IV. Out of an abundance of caution, Plaintiff-Relator is filing a Motion to Amend contemporaneous with these

Fraudulent Inducement; and **(6)** Reverse False Claims.[6] (ECF No. 26 at ¶¶ 745–801). Additionally, Relator alleged corresponding claims under the North Carolina False Claims Act in Count VII of the Amended Complaint.[7] (*Id.* at ¶¶ 802–11).

As detailed in Plaintiff-Relator's Response to Defendants' Motion and during the hearing, the Amended Complaint satisfies the standards of plausibility and particularity (where necessary). Accordingly, Plaintiff-Relator objects to the Magistrate Judge's recommendation that the Amended Complaint be dismissed.

### B. Presentment and False Record or Statement Claims

Plaintiff-Relator first objects to the Magistrate Judge's recommendation that Counts I, II, IV and V be dismissed.

---

Objections. Accordingly, Plaintiff-Relator objects to Report's characterization of Count IV as only a claim under Section 3729(a)(1)(B). *See Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995) ("Legal labels characterizing a claim cannot, standing alone, determine whether it fails to meet th[e] extremely modest standard" of "notice pleading."); *see also Nester v. Hampton Inn Princeton*, No. 1:13-03336, 2013 WL 5425123, at *4 (S.D. W.Va. Sept. 26, 2013) ("[C]ourts have determined that citing the wrong statute as the basis for a claim will not render the pleading insufficient.").

[6] Defendants' Motion did not address Count III (FCA: Conversion), Count IV (FCA: Submission of Express and Implied False Certifications), or Count V (FCA: Fraudulent Inducement).[6] (*See* ECF No. 45 at 16–18, 30 & n.10 (raising this issue)).

[7] The parties and the Magistrate Judge agree that Plaintiff-Relator's claims under the North Carolina False Claims Act (Count VII) are analyzed in the same manner as Plaintiff-Relator's FCA claims. (ECF No. 51 at 15 n.6 (citing *United States ex. rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 179 n.2 (4th Cir. 2022))). Accordingly, these Objections are addressed to both the FCA and North Carolina FCA causes of action.

7

### 1. False Statement or Fraudulent Course of Conduct

The Report concludes that Relator sufficiently alleged that group records were falsified at Defendants' Asheville, North Wilkesboro, Pinehurst, and Fayetteville facilities. (ECF No. 51 at 18). However, the Report finds that "Relator has not alleged sufficiently that group therapy records were falsified at any [other] facility." (*Id.*). Thus, the Report recommends dismissal for failure to plead falsity. Plaintiff-Relator objects, as she has plausibly and particularly pled that a false statement and a fraudulent course of conduct. Respectfully, the Magistrate Judge's analysis is directly in conflict with Fourth Circuit precedent and should be rejected.

"The phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly." *Harrison*, 176 F.3d at 788. "The False Claims Act is 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government . . . . [T]he Court has consistently refused to accept a rigid, restrictive reading . . . ." *Id.* (alterations in original) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)). "Thus, any time a false statement is made in a transaction involving a call on the U.S. fisc, False Claims Act liability may attach." *Id.*

Under *Harrison* and its progeny, a relator must first allege "a false statement or fraudulent course of conduct." *Id.* Here, the Magistrate Judge found that Plaintiff-Relator has alleged both a false statement and a fraudulent course of conduct at Defendants' Asheville, North Wilkesboro, Pinehurst, and Fayetteville facilities. (ECF

8

No. 51 at 17). Indeed, Plaintiff-Relator pled detailed allegations about Defendants' false statements and fraudulent course of conduct—including a *specific* falsified group therapy note for a Medicare/Medicaid patient.[8] (ECF No. 26 at ¶¶ 459–637). That ends the inquiry at the motion to dismiss stage.

The law imposes no requirement that Plaintiff-Relator provide a specific example false statement for each of Defendants' locations.[9] Rather, Plaintiff-Relator must simply allege either *a* false statement or fraudulent course of conduct—both of which were done here. In any event, the Amended Complaint contains plausible and particularized allegations that Defendants' fraudulent course of conduct was widespread and driven by "corporate." (*See, e.g.*, ECF No. 26 at ¶¶ 560–81 (providing a

---

[8] Moreover, in support of her fraudulent inducement claim, Plaintiff-Relator alleged that Defendants devised a scheme to falsify group therapy records and fail to provide individual therapy to induce SAMHSA, CARF, and Government Programs to certify, accredit, and contract with Defendants. (*See, e.g.*, ECF No. 26 at 683–99 (alleging that "Defendants signed statements," pursuant to 42 C.F.R. § 8.11(b)(6), that the Asheville and North Wilkesboro facilities "would comply with the conditions of its OTP certification"); *see also id.* at ¶¶ 784–91). Neither Defendants nor the Magistrate Judge have addressed this claim.

[9] The cases cited by the Magistrate Judge are inapposite. In *United States ex rel. McLain v. Nutritional Support Servs., L.P.*, the Relator made *no* allegations of falsity at *any* location. No. 6:17-cv-2608-BHH, 2020 WL 2464655, at *6 (D.S.C. March 16, 2020). Similarly, in *United States ex rel. Badr v. Triple Canopy, Inc.*, the relator lacked *any* personal knowledge or circumstantial evidence about defense contracts for bases where he was *not* stationed. 950 F. Supp. 2d 888, 900 (E.D. Va. 2013), *reversed on other grounds*, 857 F.3d 174 (4th Cir. 2017).

9

detailed example of falsifying group therapy notes); *see also id.* at ¶¶ 563–65 (detailing an email directing employees to use a shorter fraudulent group therapy note because "Corporate wants less detail")).

At bottom, Plaintiff-Relator "need not prove [her] entire case within the confines of the complaint." *Altimeo Asset Management v. Qihoo 360 Technology Co. Ltd.*, 19 F.4th 145, 151 (2nd Cir. 2021) (applying Rule 9(b)'s heightened pleading requirements)); *see also Nicholson*, 42 F.4th at 195 ("'A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999))). The scope of Defendants' false statements and fraudulent course of conduct goes to the issues of damages, *not* falsity. Accordingly, the Court should reject the Report and conclude that Plaintiff-Relator has plausibly and particularly pled falsity.

### 2. Materiality

The Magistrate Judge also concluded that the Amended Complaint did not "allege[] with sufficient particularity that Defendants' false representations regarding the provision of group therapy or, more generally, their compliance with applicable laws and regulations, were material to any Government Healthcare Program's

payment decisions." (ECF No. 51 at 22). Plaintiff-Relator objects, and this Court should reject the Report's recommendation.

Plaintiff-Relator has alleged that each of Defendants' false statements, records, and certifications were material to the Government Programs' payment decisions. (*See* ECF No. 26 at ¶¶ 634, 650, 655, 660, 674, 681, 699, 711, 719, 737, 742–43, 757, 776, 785, 798, 809). These allegations are far from conclusory, are well supported by Relator's detailed factual allegations, and unequivocally assert that the Government Programs would not have paid the claims at issue if they were aware of the falsity of Defendants' statements, records, and certifications.[10] (*See id.*)

For example, Relator's false certification claims are premised on Defendants' false certifications to Government Programs that they were complying with, *inter alia*, federal OTP regulations and the CIA. (*See* ECF No. 26 at ¶¶ 656–744). These requirements are not "garden-variety" regulatory requirements. *See Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016). Rather, they are central and essential preconditions of operation for OTPs. (ECF No. 26 at ¶¶ 16, 183

---

[10] Of note, the Department of Justice and State of Rhode Island recently intervened in an FCA case with extremely similar allegations to the case at bar—*United States ex rel. Sara Quaresma*, No. 20-CV-0451-JJM-LDA, at ECF No. 11 (D.R.I. April 14, 2023) (Complaint in Intervention). *See Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396–97 (4th Cir. 2006) (holding that a federal court can take judicial notice of court filings in another case in connection with a motion to dismiss).

("[F]or Opioid Use Disorder[,] . . . OTPs are the only setting in which Methadone can be legally prescribed and dispensed.")).

Put simply, Plaintiff-Relator has alleged that Defendants engaged in a corporate-driven fraudulent course of conduct to give the illusion that they were providing the "Treatment" aspect of "Medication-Assisted Treatment." Worse yet, Defendants committed this fraudulent conduct while subject to a CIA. That is precisely the type of conduct that the Fourth Circuit has found to be material. *See, e.g.*, *United States v. Triple Canopy, Inc.*, 857 F.3d 174, 178 (4th Cir. 2017) (finding a defendant's omissions "material for two reasons: common sense and [defendant's] own actions in covering up the noncompliance"). Accordingly, the Court should reject the Report and find that Plaintiff-Relator plausibly and particularly alleged materiality.

### 3. Submission of a False Claim

The Magistrate Judge found that Plaintiff-Relator did not allege with particularity: **(1)** that specific false claims actually were presented to the Government for payment; *or* **(2)** that Defendants engaged in "a pattern of conduct that would *necessarily* have led to submission of false claims to the government for payment." (ECF No. 51 at 23–24 (quoting *Grant*, 912 F.3d at 197). Plaintiff-Relator objects, and this Court should reject the Magistrate Judge's recommendation.

12

### a. False Claims Actually Presented

The Magistrate Judge did not analyze whether the Amended Complaint particularly alleges a representative example false claim. (ECF No. 51 at 24–25). Rather, the Report states that "[d]uring the hearing, Relator clarified that she was not relying on a representative false claim that was actually made, but was instead relying on the alternative theory that a false claim was necessarily presented based on Defendants' pattern and practice." (*Id.*). Respectfully, that is simply not true.

Throughout this litigation, Plaintiff-Relator has acknowledged that Medicare (and Medicaid) do not require group therapy for *every* patient during *every* week. (ECF No. 52 at 35–36; *see also* ECF No. 45 at 14). While the Medicare bundled billing regulation—42 C.F.R. § 410.67—permits an OTP to submit a bundled bill if no group therapy or individual therapy was provided in a given week, OTPs (and OBOTs) are subject to stringent federal and state statutes, regulations, standards, certifications, and accreditations. (*See* ECF No. 26 at ¶¶ 216–346; *see also* 42 C.F.R. § 8.12(a) (Federal Opioid Treatment Standards)).

During the hearing, Plaintiff-Relator acknowledged that, because of the Medicare bundled billing regulation, her claims for Medicare OTP patients are encom-

passed in Count IV (Express and Implied False Certifications) and Count V (Fraudulent Inducement).[11] (ECF No. 52 at 35–40). On the other hand, Counts I and II encompass fee-for-service claims—i.e., not Medicare OTP claims. (*See id.*). During the hearing, the Magistrate Court asked whether Plaintiff-Relator alleged a representative false claim. (ECF No. 52 at 43–48). Plaintiff-Relator's counsel responded that there was not a representative false claim alleged under Count I and II—i.e., a *non-Medicare* OTP patient. (*Id.*).

However, this acknowledgement was *only* for Counts I and II. Plaintiff-Relator's counsel unequivocally stated that the Amended Complaint alleges, with particularity, a representative false claim under the remaining Counts of the Amended Complaint.[12] (*See* ECF No. 52 at 51 ("[W]e've alleged in the response, the time, place, contents and identity of what the defendants obtained."); *see also id.* at 46–53). Indeed, Plaintiff-Relator's Response to Defendants' Motion details representative false Medicare claim—Patient 6.[13] (*See* ECF No. 45 at 19–22).

---

[11] Additionally, Medicare OTP claims also fall within Counts III (Conversion) and VI (Reverse False Claims).

[12] Count III (Conversion) is not subject to Rule 9(b). (ECF No. 52 at 49–50).

[13] The Report states that Plaintiff-Relator alleged "that Defendants submitted bills to Medicare and Medicaid for weekly bundles of OTP services" for Patient 6. (ECF No. 51 at 11). That is incorrect. The Amended Complaint alleges that Defendants "submitted bills to Medicare for weekly bundles of OTP services" and "submitted bills to Medicaid for OTP services . . . including group therapy." (*Id.* at ¶¶ 630, 631).

14

Accordingly, the Court should reject the Magistrate Judge's Report, as it fails to analyze the Amended Complaint under the correct legal standard. As set forth in Plaintiff-Relator's Response to Defendants' Motion, the Amended Complaint plausibly alleges a representative example with particularity.

### b. False Claims Necessarily Presented

The Magistrate Judge concluded that Plaintiff-Relator did not "allege a pattern of conduct that would necessarily have led to the submission of a false claim to a Government Healthcare Program." (ECF No. 51 at 26). The Magistrate Judge specifically found:

> With respect to other Government Healthcare Programs, the Amended Complaint provides no specific information regarding any claims made to programs other than Medicare. Although the Amended Complaint references patients other than Patient 6 who were falsely noted to have participated in group therapy, and further alleges generally that bills were submitted for group therapy sessions that never occurred, the Amended Complaint does not explain which of these individuals were associated with which Government Healthcare Programs.

(ECF No. 51 at 25–26). Plaintiff-Relator objects, as this is an incorrect application of Fourth Circuit precedent.

Last year, in *Nicholson*, the Fourth Circuit again emphasized "that there are two ways to show presentment with particularity, and *only one* requires a representative example." 42 F.4th at 194 n.8 (emphasis added). "The second option requires

---

Medicaid does *not* use bundled billing and, instead, pays for group therapy as a fee-for-service. (*See id.* at ¶¶ 271–305, 631).

only that 'a plaintiff can allege a pattern of conduct that would *necessarily* have led to submission of false claims to the government for payment,' even where we do not have particularized detail about any one such claim." *Id.* ("[T]here was and is no open question on this issue in the Fourth Circuit.").

Here, the Amended Complaint alleges that Defendants provide opioid treatment to beneficiaries of Medicare, Medicaid, TRICARE, Department of Veterans Affairs, and Cures Act grant funding. (*See, e.g.*, ECF No. 26 at ¶¶ 18, 54, 57, 261, 463). The Amended Complaint details Defendants' scheme to falsify records and not provide any group therapy or legally adequate individual therapy. (*See, e.g.*, *id.* at ¶¶ 8–57, 460–637). Furthermore, the Amended Complaint explains how Defendants submit claims to Government Healthcare Programs, alleges Defendants made false statements and submitted false claims, and alleges that the United States and the State of North Carolina paid these claims based on Defendants' materially false statements, records, and certifications.[14] (*See, e.g.*, *id.* at ¶¶ 52–57, 199–346, 348–93, 460–637).

---

[14] Defendants contend that any allegations made "upon information and belief" should be disregarded. (*See* ECF No. 43-1 at 25). That is simply not the law in the Fourth Circuit. In *Grant*, the Fourth Circuit actually used "upon information and belief" pleading as an example of how a Relator who does not "have specific knowledge of a company's financial and billing structure" can satisfy Rule 9(b). 912 F.3d at 199 ("Here, we find that the complaint lacks any allegation -- for instance, that upon information and belief, bills are routinely sent to the government . . . and are routinely paid as presented -- that fills th[e] gap" between "the alleged false claims and government payment.").

16

Respectfully, the Magistrate Judge's requirement of a representative patient/claim finds no support in Fourth Circuit law. Indeed, relators are not required "to produce documentation or invoices at the outset of the suit," nor are "employees who do not have specific knowledge of a company's financial and billing structure precluded from adequately pleading FCA claims . . . ." *Grant*, 912 F.3d at 199. Instead, a relator is only required to "connect the dots, even if unsupported by precise documentation, between the alleged false claims and government payment." *Id.* Here, Plaintiff-Relator has exceeded this standard.

### C. Conversion

The Magistrate Judge concluded that Plaintiff-Relator's conversion claim should be dismissed because it is "redundant of her presentment and false record or statement claims." (ECF No. 51 at 28). Plaintiff-Relator objects.

Plaintiff-Relator sufficiently alleged a claim for conversion when Rule 8 is applied appropriately. *See* (ECF No. 26 at ¶¶ 763-70). Rule 8's pleading standard applies to a conversion claim because "Defendants' knowledge is the determinative factor for a FCA conversion claim, and not any alleged fraud." *United States ex rel. Harbit v. Consultants in Gastroenterology*, No. 3:19-cv-03403-JMC, 2021 WL 1197124, at *7 (D.S.C. March 30,2021). For example, in *Harbit*, the court found the allegations that "Defendants failed to remit funds collected from the Government on false pretenses, causing a lower amount of federal funds available to others" were

sufficient under Rule 8 to state a claim for conversion. *Id.* Indistinguishably, Plaintiff-Relator's Amended Complaint includes allegations that Defendants knowingly and unlawfully retained Government Program funds despite failing to provide group therapy, falsifying records, and providing inadequate individual therapy. *See* (ECF No. 26 at ¶¶ 763-70).

The Report states that "the Amended Complaint does not tie any of these notes to a specific claim made to a particular Government Healthcare Program or to any payment received in response to that claim." (ECF No. 51 at 28). This is incorrect. Plaintiff-Relator's Amended Complaint alleges that Defendants received payments that they otherwise would not have been entitled to. *E.g.* (ECF No. 26 at ¶¶ 363-72 ("These claims have been—and continue to be—paid by state Medicaid programs based on the implied and express certifications that Defendant's make when submitting claims.")). Defendants are *falsifying* entire treatment records for patients for a reason: to maintain eligibility so that they *can bill* and can *continue to bill* Government Healthcare Programs.

Accordingly, the Court should reject the Report and conclude that the Amended Complaint sufficiently alleges an FCA conversion claim.

18

### D.   Reverse False Claim

Finally, the Magistrate Judge recommended dismissing Plaintiff-Relator's Reverse False Claims Act claim (Count VI). Plaintiff-Relator objects.

The Fourth Circuit has not addressed a Reverse False Claims Act cause of action premised on a CIA, and there is a split in authority on this issue. The Court should follow *United States ex rel. Boise v. Cephalon, Incorporated*. No. 08-287, 2015 WL 4461793 (E.D. Pa. July 21, 2015). Here, Defendants' obligation to pay stipulated penalties under the CIA arose when they breached the CIA's requirements and failed to refund the government programs for services that were not performed.

In *Boise*—like the CIA at issue in this case—defendant's CIA required them to notify the Office of the Inspector General ("OIG") of the Department of Health and Human Services of any "reportable events" and to regularly certify the company had an effective compliance program. *Id.* at *1. The *Boise* CIA further said that "failure to comply with certain obligations as set forth in this CIA may lead to the imposition of . . . monetary penalties" and that the OIG may "exercise its contractual right to demand payment" after "finding that [defendant] has failed to comply with any of the obligations in Section X.A and after determining that Stipulated Penalties are appropriate" and further identifying the price of the penalties. *Id.* The *Boise* relators alleged that defendants' failure to report its illegal kickbacks and promotion

19

schemes and its false certifications of compliance allowed defendant to improperly avoid its obligation to pay those penalties. *Id.*

Under the FCA, an "obligation" is "an established duty, whether or not fixed, *arising from an express or implied contractual*, grantor-grantee, or licensor-licensee *relationship*, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment . . . ." 31 U.S.C. § 3729(b)(3) (emphasis added). Because contracting parties inherently are not required to sue each other for every breach, the *Boise* court concluded that the defendant's "obligation to pay stipulated penalties under the CIA cannot be construed as arising only when the OIG demands payment of those penalties." *Boise*, 2015 WL 4461793 at *6. Instead, the contractual obligation is an "established duty" under section 3729(b)(3) upon breach of the CIA's relevant requirements, and therefore relators have stated a reverse false act claim. *Id.*

The reasoning of the *Boise* case is more suitable under the facts of Relator's action. Here, Defendants entered into a CIA as a result of a $17 million healthcare fraud settlement in 2019. (ECF No. 26 at ¶¶ 405–08). Defendants repeatedly violated their contractual obligations as outlined in the Amended Complaint, and Defendants are subject to stipulated penalties for each of these violations. Moreover, Defendants unlawfully retained overpayments that they obtained as a result of the false and fraudulent conduct detailed in the Amended Complaint. Accordingly, the Court

20

should reject the Report's recommendation and find that Plaintiff-Relator plausibly alleged Reverse False Claims Act violations with particularity.

## V.  Conclusion

For the reasons stated above, the Court should reject the Report and deny Defendants' Motion to Dismiss.

Respectfully submitted this 10th day of August, 2023,

| | |
|---|---|
| **LAW OFFICES OF JAMES SCOTT FARRIN** | **LAW OFFICE OF BILL NETTLES** |
| By:      /s/ Kaitlyn E. Fudge | William N. Nettles |
| Gary W. Jackson (NC Bar No. 13976) | Frances C. Trapp |
| Kaitlyn E. Fudge (NC Bar No. 54829) | John L. Warren III |
| 280 South Mangum Street, Suite 400 | 2008 Lincoln Street |
| Durham, North Carolina 27703 | Columbia, South Carolina 29201 |
| Telephone: (919) 688-4991 | Telephone: (803) 814-2826 |
| | (*Admitted Pro Hac Vice*) |

*Attorneys for Plaintiff-Relator*

21

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document using the CM/ECF system, which automatically serves all counsel of record.

This the 10th day of August, 2023.

By: /s/ Kaitlyn E. Fudge
Kaitlyn E. Fudge