# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* ) | |
| LISA WHEELER, ) | |
|     Plaintiff-Relator, ) | |
| ) | **CIVIL ACTION** |
| v. ) | **NO. 1:21-CV-241-MR-WCM** |
| ) | |
| ACADIA HEALTHCARE ) | |
| COMPANY, INC. *et al.* ) | |
|     Defendants. ) | |

## DEFENDANTS' RESPONSE TO RELATOR'S OBJECTIONS TO MEMORANDUM AND RECOMMENDATION

Relator's Objections to the Memorandum and Recommendation (the "Objections") [Dkt. No. 53] from Magistrate Judge Metcalf to dismiss her *qui tam* False Claims Act complaint ring hollow as most of her objections relate to immaterial aspects of her claims or are altogether incorrect. She cannot escape the fact that her complaint fails as a matter of law, a fact that the Magistrate Judge methodically addressed in the 35 well-reasoned pages of the Memorandum and Recommendation (the "Recommendation") [Dkt. No. 51].

Defendants Acadia Healthcare Company Inc., ATS of North Carolina LLC, and CRC Health LLC ("Defendants") submit the following Response to Relator's Objections. As described more fully below, the Court should adopt the Magistrate Judge's Recommendation in its entirety.

1

## I.    Background

Relator Lisa Wheeler (the "Relator") alleges that Defendants submitted false claims to the Government in violation of the False Claims Act ("FCA") by failing to provide group therapy, failing to provide compliance training, and failing to notify the Department of Health and Human Services Office of Inspector General of a "reportable event" under Defendants' Corporate Integrity Agreement ("CIA"). Providers bill Medicare for Medication-Assisted Treatment ("MAT") services using a bundled code encompassing all treatment services. (Am. Compl., ¶ 258). That fact is clear and unrebutted. North Carolina Medicaid also covers MAT services on a fee-for-service basis, but North Carolina Medicaid regulations do not *require* patients to receive every MAT service. (*See id.*, ¶ 468 ("Patients' treatment plans indicate the *frequency* and *type* of counseling services that must be provided.")).

On June 14, 2023, Magistrate Judge Metcalf held a hearing on Defendants' Motion to Dismiss, and issued the Recommendation on July 27, 2023, recommending that the Court grant the Motion to Dismiss in its entirety.

## II.    Plaintiff-Relator's Allegations[1]

Relator identifies five "erroneous or incomplete statements" in the Recommendation's summary of her allegations. None of these statements are

---

[1] Defendants' Response follow the structure and headings used in both Relator's Objections and the Recommendation.

material to the Magistrate Judge's findings, and in fact, none of the objections hold merit.

First, Relator objects that the Recommendation only discusses her allegations about Opioid Treatment Programs ("OTP") billing and not Office Based Opioid Treatment ("OBOT") billing as well. (Objections, p. 2). While Relator alleges generally that, "upon information and belief, Defendants provide OBOT services to [Medicare/Medicaid] beneficiaries at the Asheville facility and North Wilkesboro facility," the only federal beneficiary Relator references received "Methadone from the Asheville facility's OTP." (Am. Compl. ¶¶ 351, 365, 582). As the Recommendation notes, "MAT may be provided in a 'variety of settings,' including [OBOT] or an [OTP]; however, the drug Methadone may be legally prescribed and dispensed only when MAT is used in the context of an OTP." (Recommendation, p. 4 (citing Am. Compl. ¶¶ 15-16)). The Recommendation thus focused on OTP. Furthermore, the billing framework applies to both OTPs and OBOTs so the failure to discuss OBOTs in detail in the Recommendation is immaterial to the Magistrate Judge's findings.

Second, the Objections incorrectly state that "the Report omits any reference to Plaintiff-Relator's allegations that these claims 'have been—and continue to be—paid' by the Government Healthcare Programs." (Objections, p. 3). The Recommendation specifically states that Relator "alleg[es] that Defendants engaged

in a pattern and practice of falsifying group therapy records, necessarily leading to the submission of false and fraudulent claims *which were paid by the Government Healthcare Programs*" and that "Relator further *asserts that the Government Healthcare Programs paid Defendants* based on these certifications, and that these certifications were material to payment decisions." (Recommendation, p. 14 (emphasis added)). Relator is clearly mistaken in claiming the Recommendation fails to reference claims being paid by the Government.

Third, Relator broadly objects to the Magistrate Judge's use of the word "generally" throughout the Recommendation. (Objections, p. 3). The Magistrate Judge correctly notes that Relator "generally outlin[ed]" Defendants participation in and submission of bills to Government Healthcare Programs." (Recommendation, p. 5). While Relator might disagree with this descriptor, describing allegations as "general" does not materially alter the Recommendation. In fact, no matter how specifically Relator might have outlined the billing system—which she mostly alleged "upon information and belief"—her claims fail because Medicare pays for MAT services using bundled billing that does not require the provision of group therapy and North Carolina Medicaid does not require the provision of any group therapy for MAT services.

Fourth, Relator nitpicks a footnote in the Recommendation that clarifies that she "has not provided additional information or documents" regarding a 2014

settlement between Defendant CRC Health, LLC's predecessor and the Department of Justice. (Objections, p. 4). Relator does not allege how the 2014 settlement is relevant to this case nor does the Magistrate Judge rely on the settlement in the Recommendation, but merely gives it a passing reference.

Fifth, Relator erroneously claims that the Magistrate Judge stated that the CIA only imposed requirements on Defendant CRC Health, LLC. (Objections, p. 4). Contrary to Relator's assertion, the Recommendation provides that "*Acadia and CRC* entered into a Corporate Integrity Agreement." (Recommendation, p. 6) (emphasis added). It then states that the CIA "require[s], *among other things*" certain requirements of CRC. (*Id.* at 7 (emphasis added)). The Recommendation never states that the CIA only imposes requirements on CRC, but merely highlights certain CRC requirements. This objection is yet another misreading of the Magistrate Judge's Recommendation.

### III.  Legal Standards

#### A. Report and Recommendation

The Court need only take a *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "[W]hen objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Pride v. Murray*, 595 F. Supp. 3d 453, 458 (W.D.N.C. 2022) (quoting *Orpiano v.*

*Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)). Similarly, "[d]e novo review is also not required 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.'" *Id.; see also, U.S. v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized."). Furthermore, "Merely reiterating the same arguments made in the pleadings submitted to the Magistrate Judge does not warrant *de novo* review." *N.C. ex rel. Bishop v. Cnty. of Macon*, 809 F. Supp. 2d 438 , 442 (W.D.N.C. 2011), *aff'd in part, vacated in part, remanded sub nom. Bishop v. Cnty. of Macon*, 484 Fed. Appx. 753 (4th Cir. 2012).

### B. Motion to Dismiss

A complaint must "state a plausible claim for relief" under Rule 8(a) to survive a Rule 12(b)(6) motion to dismiss. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To state a plausible claim, the plaintiff must "plead[] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause

of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

The linchpin of FCA liability is "whether the defendant caused a false claim to be presented to the government[.]" *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013). Because FCA claims sound in fraud, relators must also satisfy Rule 9(b)'s heightened pleading requirement to plead fraud with particularity. *Id.* at 455. The Fourth Circuit sets forth two ways a relator can plead a false claim with particularity: (1) alleging "with particularity that specific false claims actually were presented for payment" or (2) alleging "a pattern of conduct that would necessarily have led to the submission of false claims to the government for payment." *U.S. ex rel. Grant v. United Air., Inc.*, 912 F.3d 190, 197 (4th Cir. 2018).

## IV.   Objections

### A. Relator's Claims

Despite the fact that "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge," Relator largely reiterates her arguments she made in her opposition to the motion to dismiss and arguments before the Magistrate Judge, hoping for a different result instead of addressing the Recommendation with "specific and particularized" objections as required. *Midgette*, 478 F.3d at 621.

### B. Presentment and False Record or Statement Claims

The Magistrate Judge correctly determined that Counts I, II, IV, and V should be dismissed.

### 1. False Statement or Fraudulent Course of Conduct

The Magistrate Judge correctly found that Relator failed to plead with sufficient particularity that the alleged conduct occurred at Defendants' facilities outside of Asheville, Pinehurst, Fayetteville, and North Wilkesboro. As the Recommendation notes, outside of those four facilities, Relator merely alleges "upon information and belief" that the alleged fraud is occurring "at Defendants' facilities across the State of North Carolina and across the United States." (Recommendation, p. 17 (quoting Am. Compl. ¶¶ 581, 672)). Relator argues that her broad statement that "upon information and belief," the conduct is occurring across the country satisfies the particularity requirement of Rule 9(b). That is not so, and Relator has no basis to allege as much because she never worked at those other facilities and her job gave her no insight into their rendering of care or submission of claims to federal healthcare programs.

Relator cannot expand her claims to all Defendants' facilities across the country merely based on her personal knowledge of a small subset of those facilities located in North Carolina. Where a relator "only observed conduct" at one facility yet "pleads upon information and belief that wrongful conduct occurred at facilities

in sixteen other states[, t]his pleading does not state the who, what, when, where, and how the alleged fraud occurred with the particularity required in Rule 9(b)." *U.S. ex. rel. Ribik v. HCR ManorCare, Inc.*, No. No. 1:09-cv-13, 2017 WL 3471426, at *3 (E.D. Va. Aug. 10, 2017). Similarly, a relator "cannot use his allegation of a fraudulent scheme at one location involving one contract to create an inference that the scheme must have resulted in the submission of false claims at other locations governed by other contracts of which he lacked personal knowledge." *U.S. ex rel. Badr v. Triple Canopy, Inc.*, 950 F. Supp. 2d 888, 900 (E.D. Va. 2013), *rev'd in part on other grounds*.

Just as in those cases, Relator lacks any personal knowledge or circumstantial evidence about the conduct at facilities where she was not employed and did not interact with any employees or management. Her general allegations that "upon information and belief" the conduct resulted from a corporate policy falls far short of the level of detail required by Rule 9(b). Relator also erroneously states that, "The scope of Defendants' false statements and fraudulent course of conduct goes to the issues of damages, not falsity." (Objections, p. 10). The requirement to allege a fraudulent course of conduct goes directly to the issue of falsity, and the ability to allege fraudulent conduct at one location does not give a relator broad license to allege fraudulent conduct at every single one of a defendant's locations. *Triple Canopy*, 950 F. Supp. 2d at 900. Thus, the Magistrate Judge correctly recommended

9

that Relator cannot sustain a claim related to conduct at facilities other than Asheville, Pinehurst, Fayetteville, and North Wilkesboro, based on her failure to allege a false statement or a fraudulent course of conduct with particularity.

## 2. Materiality

The Magistrate Judge correctly found that "the general nature of Relator's allegations regarding materiality" fail to clear the high hurdle of Rule 9(b). (Recommendation, p. 22). While Relator repeats throughout the Amended Complaint that the alleged false statements "were material," merely repeating this conclusory statement does not provide the required level of detail to plead materiality with particularity.

For the first time, Relator states that the Department of Justice and State of Rhode Island intervened in a similar FCA case as evidence of materiality and asks the Court to take judicial notice of this factually distinguishable case. (Objections, p. 11). That case is entirely distinguishable from the case at hand, in numerous ways besides the obvious distinguishing characteristic that the government *declined* to intervene in this case. While the Rhode Island case also concerns MAT services, the allegations in that case are broader and more severe. For instance, the operative complaint there alleged that the defendants (1) failed to provide a majority of patients with individualized treatment plans, which are explicitly *required* by federal and state law—unlike group therapy; (2) falsified records in preparation for State

10

audits—which there is no allegation that Defendants did here; (3) actually submitted *specific, identifiable claims* to Medicaid for services that were not actually rendered; (4) falsified and backdated records; and (5) engaged in conduct that actually harmed their patients. *See U.S. ex rel. Quaresma v. The Journey to Hop, Health and Healing, Inc.*, No. 20-CV-0451-JJM-LDA, at ECF No. 11, ¶¶ 75-76, 80-81 (D.R.I. April 14, 2023). Given these materially distinct underlying facts, the government's decision to intervene in that case does not save Relator from her failure to plead materiality with particularity in this case.

Relator's general allegations that Defendants failed to provide group therapy coupled with her conclusory statements that it "was material" do not satisfy Rule 9(b)'s pleading requirement. This is especially true given that Medicare reimburses for MAT services using a bundled code that only requires that providers perform one of the enumerated services. (Am. Compl., ¶ 244). In short, Medicare does not require group therapy to bill the bundled code, and it is not even possible to bill Medicare separately for group therapy. While North Carolina Medicaid covers MAT services on a fee-for-service basis, it does not require patients to receive every MAT service every week. (*See id.*, ¶ 468 ("Patients' treatment plans indicate the frequency and type of counseling services that must be provided.")). The billing requirements thus provide further evidence that Relator has failed to adequately plead materiality—a fact that the Magistrate Judge clearly notes. (Recommendation, p. 22).

Relator claims, citing seventeen paragraphs of the Amended Complaint, that her allegations of materiality are "far from conclusory." (Objections, p. 11). But each paragraph merely recites the legal conclusion that the alleged false statements were material. Six of them are identical: "These false express and/or implied certifications were material to the Government Healthcare Programs' decisions to pay Defendants' claims for individual and/or group therapy." (Am. Compl. ¶¶ 674, 681, 699, 711, 719, 737). And the other eleven paragraphs paraphrase this same statement. These are textbook examples of conclusory assertions.

Following submission of her Objections, Relator filed a Notice of Supplemental Authority [Dkt. No. 56], attaching a recent decision from the Fourth Circuit relating to materiality under the FCA. For numerous reasons, this decision is entirely inapposite and does nothing to resurrect Relator's claims. First, the defendant in that case falsified patient records and other documentation specifically in order to satisfy explicit eligibility requirements under Virginia Medicaid rules. *U.S. v. Walgreen Co.*, No. 22-1491, at \*6 (4th Cir. Aug. 15, 2023). Second, the Government actually plead twelve *specific* patients whose claims were at issue, where claims were initially denied coverage but then were falsified, re-submitted, and paid based explicitly on the falsified records. *Id.* Third, the defendant had previously pled "guilty to engaging in the same scheme to defraud Tennessee's Medicaid program." *Id.* at \*7. And fourth, the *Walgreen* case involved false claims

12

submitted in violation of existing Virginia Medicaid eligibility requirements that CMS later concluded were a violation of the Medicaid Act. *Id.* at \*13 n.5. Here, by contrast, the alleged false claims involve a requirement—the provision of group therapy—that never existed as it is not required for MAT services to be covered.

Perhaps most importantly for purposes of materiality under the FCA, the Fourth Circuit found in *Walgreen* that the defendant's misrepresentations were material because they had a demonstrable impact on government decision making—Medicaid denied payment and then changed its payment decision based directly on the defendant's amendments to the claims. *Id.* at \*11-12 ("[T]he Department and its proxy decisionmakers rejected (or required more information about) claims when patients truthfully stated they didn't satisfy Virginia's disease-severity or substance-abstinence requirements."). As the Fourth Circuit precisely noted, this fact goes to the heart of the *Escobar* materiality test. And, unlike in *Walgreen*, Relator can point to no such indication from any federal healthcare program that failure to provide group therapy—when this service is not required—is material to the Government's decision to pay a claim for MAT. For this reason, Relator's reliance on this recent case is misguided.

### 3. Submission of a False Claim

The Magistrate Judge correctly found that Relator failed to allege either that "specific false claims actually were presented to the government for payment" or "a

pattern of conduct that would *necessarily* have led to submission of false claims to the government for payment." *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457).

### a. False Claims Actually Presented

The Magistrate Judge states that Relator acknowledged that she did not present any representative claims, but Relator alleges that she did in fact present a representative example for all counts besides Counts I and II based on her allegations concerning Patient 6. While Defendants maintain that Relator stated at the hearing on Defendants' motion to dismiss that she did not allege any representative claims, the allegations surrounding Patient 6 nevertheless do not contain the level of specificity required to constitute a representative claim, and fail as a matter of law. As the Magistrate Judge noted, "Relator acknowledges that Patient 6 was a Medicare beneficiary, and that Medicare does not require that group therapy be given before a provider may use bundled billing codes." (Recommendation, pp. 28-29). Even if the allegations concerning Patient 6 constituted a representative claim—which for the reasons Defendants note in their motion it does not[2]—Relator has still failed to show that the claim was false given that providers can submit a bill to Medicare for MAT services without providing group therapy.

---

[2] *See* Defendants' Motion to Dismiss, pp. 11-12. (Dkt. No. 43).

**b. False Claims Necessarily Presented**

The Magistrate Judge also correctly found that Relator failed to "allege a pattern of conduct that would necessarily have led to the submission of a false claim to a Government Healthcare Program." (Recommendation, p. 26). The Magistrate Judge found that Relator had not satisfied the standard with respect to Medicare because:

> In this case, with respect to any claims paid by Medicare, Defendants argue that because their services were bundled into a single billing code that included various optional services – such as substance use counseling, individual and group therapy, and toxicology testing – Relator has not alleged adequately that any claims submitted by Defendants were "false or fraudulent." See Doc. 43-1 at 11 ("if a bundled code includes several optional services, not all of which are required, then failure to provide one service does not cause a false claim to be submitted"). During the hearing, Relator acknowledged that group therapy is not required in order to use bundled billing codes for Medicare payments. See also 42 C.F.R. § 410.67(d)(3) & (b)(i)-(v).

(*Id.* at 25). Relator does not offer any specific objections relating to the Magistrate Judge's finding concerning Medicare. Thus, the Court should adopt the Magistrate Judge's Recommendation as it relates to Medicare claims.

Instead, Relator focuses her objections on Medicaid, TRICARE, the Department of Veterans Affairs, and Cures Act grants. While Relator generally alleges that "upon information and belief," Defendants treated beneficiaries of these other government payors, as the Magistrate Judge correctly notes, the Amended

15

Complaint does not identify any individual actually enrolled in those programs let alone an individual who received OTP or OBOT services that were billed to the government payor despite not being provided.[3] (*Id.* at 26). Generally alleging that Defendants provide OTP or OBOT services to beneficiaries falls far short of demonstrating that false claims were *necessarily* presented to the government.

### C. Conversion

The Magistrate Judge correctly found that Relator's conversion claim—Count III—failed to meet the requirements of Rule 8 and is redundant of the presentment and false record or statement claims. As to the redundancy argument, Relator merely states "Plaintiff-Relator objects" without providing *any* support for her objection. As the Magistrate Judge correctly noted:

> Relator's conversion claim appears to be redundant of her presentment and false record or statement claims discussed above. See United States of American ex rel. Govindarajan v. Dental Health Programs, Inc., No. 3:18-cv-00463-E, 2021 WL 3213709, at *6, n. 5 (N.D.Tex. July 29, 2021) (dismissing FCA conversion claim as redundant of relator's presentment and false records claims).

(*Id.* at 28). The Court should thus find the conversion claim redundant as well.

---

[3] Furthermore, as Defendants previously noted in their motion to dismiss, none of the twelve other patients identified in the Amended Complaint were alleged to be participants or beneficiaries of federal healthcare programs. (Defs' Mot. to Dismiss, p. 11 n.4).

The Magistrate Judge also correctly found that "under the less stringent pleading standard of Rule 8, Relator has not alleged facts sufficient to indicate that Defendants received payments from the Government Healthcare Programs based on an allegedly false statement that Defendants provided group therapy." (*Id.*) The Magistrate Judge correctly noted that the Amended Complaint does not tie *any* patient notes incorrectly reflecting group therapy services to *any claim* made to a particular Government Healthcare Program. (*Id.*)

Relator relies heavily on *U.S. ex rel. Harbit v. Consultants in Gastroenterology*, No. 3:19-cv-03403, 2021 WL 1197124, at *7 (D.S.C. March 30, 2021) to argue that she meets the Rule 8 pleading standard. However, in that case the relators had knowledge of false claims because the relators "were responsible for reviewing patient records for the purpose of complying with regulations of the Centers for Medicare & Medicaid Services." *Id.* at *2-3. The Court also noted that the relators alleged that defendants "provid[ed] services that did not include a physician examination and bill[ed] Medicare as if the services were provided by a physician." *Id.* at *20. Unlike the relators in *Harbit*, as the Magistrate Judge correctly recognizes, the Amended Complaint here does not tie any patient notes reflecting group therapy services to any claim made to a particular Government Healthcare Program. (*Id.*)

### D. Reverse False Claim

Relator correctly states that the Fourth Circuit has not addressed a Reverse FCA action based on alleged noncompliance with a CIA. The Eastern District of Pennsylvania, however, has addressed the issue twice, once in 2015 and again more recently in 2020. *See U.S. ex rel. Boise v. Cephalon, Inc.,* No. 08-cv-287, 2015 WL 4461793 (E.D. Pa. July 21, 2015); *Sturgeon v. PharMerica Corp.*, 438 F. Supp. 3d 246 (E.D. Pa. 2020). Rather than respond to the substance of the Recommendation, Relator merely repeats the argument from her opposition brief that the Court follow the reasoning of the earlier 2015 decision as opposed to the more recent 2020 decision that the Magistrate Judge found more persuasive. As the more recent *Sturgeon* court explained, stipulated penalties in a CIA are "future duties to pay that are too speculative [to] be a valid basis for claims under § 3729(a)(1)(G)." *Sturgeon*, 438 F. Supp. 3d at 278. Stipulated penalties that are contingent on the exercise of discretion "are not 'obligations'" and therefore cannot serve as the basis for a reverse false claim. *Id.* at 278-79. The CIA here contains the same exact contingent obligation to pay stipulated penalties. Thus, the Court should adopt *Sturgeon*'s reasoning just as the Magistrate Judge did in his Recommendation, and find that Relator cannot sustain a reverse false claim against Defendants based on alleged conduct that simply *could* lead to a penalty.

## V. Conclusion

Because the Relator has missed the forest for the trees and focused on immaterial and inaccurate disagreements with the Magistrate Judge's Memorandum and Recommendation, the Court should adopt the Recommendation and grant Defendants' Motion to Dismiss in its entirety, with prejudice.

Dated: August 24, 2023

s/ Andrew F. Solinger
Jennifer L. Weaver (*Pro Hac Vice*)
Andrew F. Solinger (*Pro Hac Vice*)
Anna Rasmussen (*Pro Hac Vice*)
HOLLAND AND KNIGHT, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 850-8116
Fax: (615) 244-6804
Jennifer.Weaver@hklaw.com
Andrew.Solinger@hklaw.com
Anna.Rasmussen@hklaw.com

Phillip Jackson (NC No. 21134)
David Hawisher (NC No. 55502)
ROBERTS & STEVENS, PA
PO Box 7647
Asheville, NC 28802
Telephone: (828) 252-6600
pjackson@roberts-stevens.com
dhawisher@roberts-stevens.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2023, I filed this Defendants' Response to Objections to Memorandum and Recommendation, using the Court's CM/ECF system, resulting in service on all counsel of record in this matter.

/s/ Andrew F. Solinger_____
Andrew F. Solinger