IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00241-MR-WCM

LISA WHEELER,                    )
                                 )
                Plaintiff,       )
v.                               )            ORDER
                                 )
ACADIA HEALTHCARE               )
COMPANY, INC. et al,            )
                                 )
                Defendants.      )
_____)

This matter is before the Court on a Motion to Authorize the Use and Disclosure of Substance Use Disorder Patient Records Pursuant to 42 C.F.R. § 2.64 (the "Motion to Authorize," Doc. 87).

## I.    Relevant Background

On September 10, 2021, Lisa Wheeler ("Plaintiff"), on behalf of the United States of America and the State of North Carolina, filed her original Complaint, under seal, against Acadia Healthcare Company, Inc., ATS of North Carolina, LLC, and CRC Health, LLC (collectively, "Defendants"). Doc. 2.

On June 2, 2022, the United States and North Carolina declined to intervene and moved to unseal the Complaint. Doc. 17.

On August 1, 2022, Plaintiff filed an Amended Complaint. Doc. 26.

1

On September 18, 2023, a Motion to Dismiss by Defendants was granted. Doc. 59. Plaintiff appealed that decision, and, on February 3, 2025, the Fourth Circuit reversed. Doc. 64.

On April 4, 2025, Defendants answered the Amended Complaint. Doc. 75.

On May 15, 2025, a Pretrial Order and Case Management Plan was entered and set a deadline of November 10, 2025 for the parties to complete court-enforceable discovery and a deadline of December 11, 2025 for the filing of dispositive motions. Doc. 79. Trial was set for the Court's May 11, 2026 term. Doc. 79.

On June 12, 2025, the Court endorsed a Stipulated Order Regarding Confidentiality and HIPAA Qualified Protective Order (the "Confidentiality Order," Doc. 81-1).

On September 3, 2025, Plaintiff filed the Motion to Authorize, which seeks an order authorizing Defendants to disclose certain substance use disorder patient records in response to Plaintiff's discovery requests. Doc. 87.

On October 17, 2025, Plaintiff filed an unopposed Motion to Extend the Scheduling Order (the "Motion to Extend," Doc. 91).

On November 14, 2025, the Court temporarily stayed the deadline for the parties to file dispositive motions.

On December 17, 2025, the Court conducted a status conference and

hearing on the Motion to Authorize and the Motion to Extend. Following that hearing, the parties were directed to meet and confer regarding both motions.

Thereafter, the parties filed two status reports. Docs. 98, 99. They agreed that before the Court could consider whether the disclosure of substance use disorder patient records would be allowed, the potentially affected patients should receive notice and an opportunity to object. The parties' status reports also reflected their agreements regarding the patients who should receive notice, the documents and information Plaintiff sought to obtain, a protocol for how notice would be provided, and the content of proposed written notices.

On April 4, 2026, the Court endorsed the parties' proposed notice protocol, subject to certain limitations, and scheduled a hearing on the Motion to Authorize for June 12, 2026. Doc. 101. The April 4 order also granted Defendants leave to issue notices (the "Notices") to certain of Defendants' Asheville, Fayetteville, and Pinehurst patients. The Motion to Extend was denied without prejudice, and the parties were advised that the Court would take up the issue of a revised pretrial schedule at the June 12 hearing or otherwise in connection with the Motion to Authorize. Id.

On April 13, 2026, the trial was continued, to be reset at a later date.

A hearing on the Motion to Authorize was conducted on June 12, 2026.[1]

---

[1] During the hearing, Defendants submitted a sealed exhibit regarding the status of notice to the affected patients. Doc. 104.

Since that hearing, Defendants have filed exemplars of the Notices (Doc. 107) as well as a separate supplemental submission advising that no further responses to the Notices had been received and that the time to respond to the Notices had elapsed for all patients. Doc. 108.

## II. Discussion

### A. The Motion to Authorize

#### 1. Legal Standard

"Federal law restricts the disclosure of information obtained 'in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation or research' conducted by the United States or with federal money." United States ex rel. Chandler v. Cook County, 277 F.3d 969, 982 (7th Cir. 2002) (quoting 42 U.S.C. § 290dd–2)). These restrictions are needed in order "to protect 'the patient, the physician-patient relationship, and the treatment programs.'" U.S. ex rel. Chandler, 277 F.3d at 981 (quoting 42 C.F.R. § 2.64(d)). "It is not only the privacy rights of individual patients that are at stake here, but also the continued effectiveness and viability of important substance abuse treatment programs." Id. at 981 (citing United States v. Smith, 789 F.2d 196, 205–06 (3d Cir.1986)); see also Whyte v. Connecticut Mut. Life Ins. Co., 818 F.2d 1005, 1010 (1st Cir. 1987) ("[A]bsolute confidentiality is an indispensable prerequisite to successful [substance abuse] research ... [and] treatment.").

4

"Without guarantees of confidentiality, many individuals with [substance abuse] problems would be reluctant to participate fully in [substance abuse] programs." Whyte, 818 F.2d at 1010; see also U.S. ex rel. Chandler, 277 F.3d at 981 ("Patients will be less willing to seek treatment if patient confidentiality is not strictly protected."); Fannon v. Johnston, 88 F.Supp.2d 753, 757 (E.D.Mich. 2000) ("Congress felt 'the strictest adherence' to the confidentiality provision was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help.") (quoting Ellison v. Cocke County, Tennessee, 63 F.3d 467, 470 (6th Cir. 1995)). Accordingly, "[b]oth the statute…and the governing regulations carry a strong presumption against disclosing" substance abuse treatment records. United States v. Cresta, 825 F.2d 538, 551–552 (1st Cir. 1987), cert. denied, 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988).

"The regulations divide information into two categories—confidential and nonconfidential communications." U.S. ex rel. Chandler v. Cook Cnty., Ill., 277 F.3d 969, 982 (7th Cir. 2002), aff'd, 538 U.S. 119, 123 S. Ct. 1239, 155 L. Ed. 2d 247 (2003); see also U.S. ex rel. Gelfand v. Special Care Hosp. Mgmt. Corp., No. CV02-6079-LDW-ETB, 2010 WL 2399693, at *2–3 (E.D.N.Y. June 10, 2010) (quoting U.S. ex rel. Chandler, 277 F.3d at 982). Confidential communications are "communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment…." 42 C.F.R. § 2.63(a).

5

"Nonconfidential communications are the '[o]rdinary, run-of-the-mill objective data' concerning a patient's treatment in a program." <u>Granger v. McBride</u>, No. 2:04 CV 8, 2006 WL 6651779, at \*5 (N.D. Ind. May 24, 2006) (quoting <u>In re The August, 1993 Regular Grand Jury (Hospital Subpoena)</u>, 854 F.Supp. 1380, 1384 (S.D.Ind.1993)).

Both confidential communications and nonconfidential communications may be disclosed with patient consent.

In the absence of consent, a court may authorize disclosure under certain circumstances. Before allowing the disclosure of information in either category, a court must find there is "good cause" to support the disclosure. 42 C.F.R. § 2.64(d). To make such a finding, the court must conclude that "(1) other ways of obtaining the information are not available or would not be effective; and (2) the public interest and need for disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." <u>Id</u>.

"If this test is met, the court may order disclosure of *nonconfidential* information…." <u>Granger v. McBride</u>, No. 2:04 CV 8, 2006 WL 6651779, at \*5 (N.D. Ind. May 24, 2006) (emphasis added).[2]

---

[2] For both confidential and nonconfidential communications, a court considering a request to authorize disclosure must provide adequate notice to the patients and the patients must be afforded "[a]n opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order." 42 C.F.R. § 2.64(b); <u>U.S. ex rel. Chandler v. Cook Cnty., Ill.</u>, 277 F.3d 969, 982 (7th Cir. 2002), <u>aff'd,</u> 538 U.S. 119, 123 S. Ct. 1239, 155 L. Ed. 2d 247 (2003). In this case, the parties

A court, however, may authorize the disclosure of confidential communications only if the information falls within certain exceptions to the general rule prohibiting disclosure; "[a]bsent one of the enumerated exceptions, a court may not order disclosure of a patients' confidential communications, even if the party seeking the communications establishes good cause and needs to use the protected records to prove its case." United States ex rel. Chandler v. Hektoen Inst. for Med. Research, No. 97 C 514, 2003 U.S. Dist. LEXIS 17569, at *13, 2003 WL 22284199 (N.D.Ill. Oct. 1, 2003); see also Whyte, 818 F.2d at 1010 (denying disclosure of confidential communications where none of the exceptions set forth in 42 C.F.R. § 2.63 applied and rejecting defendant's argument that it needed access to the records to defend its position in the litigation); U.S. ex rel. Chandler, 2003 U.S. Dist. LEXIS 17569, at *14, 2003 WL 22284199 ("[T]he regulations place the need for confidentiality to assure successful [substance abuse] treatment above a party's evidentiary needs, even if that information is of vital importance to the party.") (citing Whyte, 818 F.2d at 1010). Here, the parties agree that none of the exceptions that would allow the disclosure of confidential communications are applicable.[3]

---

negotiated the notice procedures, no patient objected to the procedures, and the undersigned is persuaded that the procedures were adequate.

[3] The exceptions are: (1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury ... (2) The disclosure is necessary in connection

### 2. Application

#### a. Nature of the Subject Records and the Notices

Here, the parties agreed that notice should be provided to three groups of patients: "Group 1" which consisted of Asheville patients; "Group 2" which consisted of North Carolina patients with Medicaid Group Counseling claims; and "Group 3" which consisted of a randomized sample from Defendants' Pinehurst clinic.

The Notices stated that Plaintiff is seeking the disclosure of the following substance abuse treatment records (the "Subject Records"): (1) patient identification number and health insurer name(s); (2) billing and claims submission records; (3) treatment assessments and treatment plans; (4) group counseling records; (5) scheduling and attendance records for counseling sessions; and (6) (with respect to the Asheville clinic only) individual counseling records. See Doc. 107.

Each Notice further stated that "all confidential communications made by [the patient] to [the patient's] treatment facility in the course of diagnosis, treatment, or referral for treatment will be redacted before being disclosed to"

---

with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or (3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of confidential communications. 42 C.F.R. § 2.63(a).

8

Plaintiff and that "[i]f any party seeks to use records in connection with any filing or at trial, patients' names and identifying information will be redacted, patients will be referred to only by their patient numbers, and the parties will seek permission to file any records under seal." Doc. 99-2 at 2; 99-3 at 2; 99-4 at 2.

Of the 30 total patients identified by the parties, 21 actually received a Notice. Of those 21 patients, 3 opposed disclosure, 1 consented to disclosure, and 17 did not respond, either in writing or by appearing during the June 12, 2026 hearing.[4]

### b. Nonconfidential Communications

Defendants concede that they have "sole possession, custody, and control" of the Subject Records, Doc. 89 at 14, and the undersigned is persuaded that patient-specific information may be necessary to prove Plaintiff's claims. See In re Aug., 1993 Regular Grand Jury (Hosp. Subpoena), 854 F. Supp. 1380, 1386 (S.D. Ind. 1994) ("Here the Government needs to know the exact services rendered and the extent of treatment provided to numerous patients over several years. To call each patient to testify about events which may have occurred far in the past, and expect the level of detail and precision necessary

---

[4] The parties agree that no disclosure of any substance abuse treatment records may be authorized for patients who did not receive notice. Accordingly, the undersigned's analysis is limited only to the 21 patients who did receive notice.

for the Government to build a case of fraudulent billing simply asks too much.”).

Additionally, the Subject Records can be produced pursuant to the Confidentiality Order that is already in place. Doc. 81-1.

Finally, and particularly considering that the universe of records sought by Plaintiff is limited to 21 patients, any “potential injury to the patient, the physician-patient relationship and the treatment services” can be mitigated through anonymization of the Subject Records. See In re Aug., 1993 Regular Grand Jury (Hosp. Subpoena), 854 F. Supp. 1380, 1386 (S.D. Ind. 1994) (“Having already decided no confidential communications can be divulged, and keeping in mind the latitude given a court in fashioning an appropriate disclosure order which protects the records even after disclosure, minimal (if any) harm will come to the patients, the physician-patient relationship, or the treatment services if mere objective information is released by [the Hospital].”); Santandreu v. Colonial Mgmt. Grp., LP, No. CV 3:16-3042-TLW, 2018 WL 11462187, at *6 (D.S.C. May 25, 2018) (allowing disclosure of objective “de-identif[ied] data” (data without any names, addresses, Social Security numbers, or any other personally identifying information but with patient identification numbers) showing “counselor interactions” with methadone treatment provider’s patients (but not patient notes) where identities of patients would not be disclosed and a confidentiality order was

already in place) (citing <u>Whyte v. Conn. Mut. Life Ins. Co</u>., 818 F.2d 1005, 1009 (1st Cir. 1987) ("'[S]anitized copies' of [treatment center] records containing only objective information ... and limiting disclosure to objective data will not result in a 'gross miscarriage of justice'")); <u>see also</u> <u>Terre Haute Reg'l Hosp., Inc.</u>, 600 N.E.2d at 1361–62 ("Where adequate measures have been taken to protect the identity of the non-party patient, their consent is not required before allowing the records to be discovered.... Where there is a protective order, as here, the attorney and expert examining the non-party medical records are prohibited from revealing ... these non-party patients pursuant to court order.").

### c. Confidential Communications

The Subject Records should not contain confidential communications since the Notice advised that "all confidential communications made by [the patient] to [the patient's] treatment facility in the course of diagnosis, treatment, or referral for treatment" would be redacted before being disclosed to Plaintiff. <u>See</u> Doc. 107.

However, to be clear, to the extent the Subject Records can be read as containing confidential communications, those communications must be redacted before the documents are disclosed. <u>See</u> <u>U.S. ex rel. Chandler v. Cook Cnty., Ill.</u>, 277 F.3d 969, 983 (7th Cir. 2002), aff'd, 538 U.S. 119, 123 S. Ct. 1239, 155 L. Ed. 2d 247 (2003) ("Because none of those conditions apply here,

11

any confidential communications must be redacted before Dr. Chandler's representatives may view the records.").

### B. Extended Pretrial Deadlines

Because the Motion to Authorize has now been resolved and certain materials will be produced, the undersigned will also extend the pretrial deadlines and reset the trial.

**IT IS THEREFORE ORDERED THAT**:

1. The Motion to Authorize the Use and Disclosure of Substance Use Disorder Patient Records Pursuant to 42 C.F.R. § 2.64 (Doc. 87) is **DENIED IN PART** and **GRANTED IN PART** as follows:

   a. With respect to the 9 patients who did not receive notice of the requested disclosure, the Motion is **DENIED**.

   b. With respect to the 21 patients who did receive notice, the Motion is **GRANTED IN PART** and **DENIED IN PART**. Specifically,

      i. With respect to any confidential communications, the Motion is **DENIED**.

      ii. With respect to any nonconfidential communications, the Motion is **GRANTED**, and Defendant is **AUTHORIZED** to produce the following:

         1. Patient identification number and health insurer

name(s);

2. Billing and claims submission records;

3. Treatment assessments and treatment plans;

4. Group counseling records;

5. Scheduling and attendance records for counseling sessions; and

6. With respect to the Asheville clinic only, individual counseling records.

iii. All records that are produced shall be subject to the Confidentiality Order, shall be anonymized, and shall be used and disclosed only in and for the purposes of this litigation.

iv. On or before August 24, 2026, Defendant shall produce the Subject Records.

2. The following pretrial deadlines are **EXTENDED**:

a. Court-enforceable discovery to and including October 5, 2026.

b. Mediation to and including October 19, 2026.

c. Motions to and including November 6, 2026.

3. Trial is **RESET** to the Court's May 10, 2027 trial term.

4. All other provisions of the Pretrial Order and Case Management Plan (Doc. 79) remain in effect.

Signed: July 10, 2026

W. Carleton Metcalf
United States Magistrate Judge